IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:15-CR-141-DJH |
| | ) | *Electronically Filed* |
| MATTHEW B. CORDER | ) | |

**GOVERNMENT'S REPLY REGARDING 404(b) EVIDENCE**

The United States, by and through undersigned counsel, hereby replies to Defendant's Objection To 404(b) Evidence Proffered By the United States. Defendant Corder argues in his objection that the Government's 404(b) evidence should be excluded on several grounds: (1) that the 404(b) incidents are insufficiently similar to the charged incident; (2) that the 404(b) evidence is substantially more prejudicial than probative; (3) that the 404(b) notice is "lacking in sufficient details"; and (4) that the 404(b) incidents will force Defendant Corder to testify, in violation of his Fifth Amendment right to remain silent. (DN 25). For the sake of clarity, the United States will address each of these arguments individually.

**1. The 404(b) incidents, while arising out of factually distinct scenarios, are strikingly similar to the charged incident because in all three incidents Defendant Corder exhibited the same motive and intent to abuse his official authority to retaliate against citizens who disrespected him**

Defendant Corder argues that the government's 404(b) evidence should be excluded because, he claims, the 404(b) incidents are factually distinguishable from the charged incident. (DN 25, at 7-11). His argument presupposes that factual congruence is a precondition for all 404(b) evidence, regardless of what it is offered to prove. That is not the case. It is true that certain types of 404(b) evidence, such as *modus operandi* evidence, must be nearly factually identical to have any probative value. See DAVID H. KAYE ET. AL, THE NEW WIGMORE: A

TREATISE ON EVIDENCE: EVIDENCE OF OTHER MISCONDUCT AND SIMILAR EVENTS § 13.6 (2015) (explaining that for *modus operandi* evidence, "[m]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts[;] . . . . The device used must be so unusual and distinctive as to be like a signature."). By contrast, where, as here, 404(b) evidence is offered as proof of intent, the prior bad acts need not be factually identical as long as the defendant "indulg[ed] himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978). Recognizing this distinction, courts and treatises have cautioned against "impos[ing] requirements, such as distinctive similarity, that apply only to the *modus operandi* method of identification, on different methods of using other crimes evidence." See United States v. Evans, 848 F.2d 1352, 1360 (5th Cir.), on reh'g, 854 F.2d 56 (5th Cir. 1988) (quoting 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5246, at 512 (1978)).

The government's theory of the case is that Defendant Corder seized and arrested D.B. not for fleeing or being disorderly, but for swearing at him[1]; for committing what is known colloquially as "contempt of cop." See Velazquez v. City of Long Beach, 793 F.3d 1010, 1022 (9th Cir. 2015) ("[A] reasonable jury could conclude that [the officer] might simply have been upset at being subjected to what he believed to be mild sarcasm or disrespect, and that [the

---

[1] See Body Camera Video, Exhibit to Government's Motion to Admit 404(b) Evidence (DN 21) at 2:44 ("And then you tell me to 'fuck off?' . . . . 'Fuck you' gets you a whole different ballgame, buddy. . . . You get to go to jail tonight."); id. at 3:55 ("You know why, Slick. You sit up there and tell me to 'fuck off?'"); id. at 4:26 ("Tell somebody to 'fuck off'. . . What planet do you ever think that was gonna fucking go?"); id. at 4:39 ("Next time you tell a police officer to 'fuck off,' you might want to think about it."); id. at 5:28 ("So then he wants to tell me to go 'fuck off' . . ."); id. at 6:15 ("Junior decides to tell me to 'go fuck off.'").

officer] then arrested Velazquez for the 'offense of 'contempt of cop,' in which officers charge resisting arrest or failure to obey or other minimal procedural offenses simply to punish or exact retribution on disrespectful or non-submissive individuals.'") (quoting Erin Murphy, *Manufacturing Crime: Process, Pretext, and Criminal Justice*, 97 GEO. L.J. 1435, 1451 n.50 (2009)). The 404(b) incidents, while arising out of factually different scenarios, show Defendant Corder exhibiting the same state of mind: becoming angry when a person disrespected him or questioned his authority, and abusing his authority as a police officer to retaliate against that person. The case law offers several examples of § 242 prosecutions in which evidence of factually distinct 404(b) incidents was admitted for the purpose of showing a defendant-officer's similar state of mind.

United States v. Rodella arose out of a road-rage incident: an off-duty sheriff became angry when a motorist flipped him off, so the sheriff followed the motorist at high speed, eventually pulled him over, yanked him out of his car, slammed him face-first onto the ground, and slapped him across the cheek with a sheriff's badge. 804 F.3d 1317, 1321-22 (10th Cir. 2015). The prosecution offered into evidence, under Rule 404(b), three prior road-rage incidents involving the defendant as proof that the defendant acted willfully—that he specifically intended to deprive the motorist of a constitutional right. The 404(b) incidents differed from the charged incident in several ways—they did not involve a high-speed chase or the use of physical force— but the defendant's intent was the same: "to express his road rage, punish disrespect, and force [the victim] to submit to his authority." Id. at 1334. The district court admitted the 404(b) evidence, reasoning:

> [T]he similarities between the prior incidents and the charged crime creates a tendency that makes the likelihood that Rodella acted willfully more probable than if evidence of the prior incidents were excluded. Each incident involves

3

> allegations that Rodella engaged in road rage, that he was shown disrespect, and that he acted out aggressively during a situation in which the other driver did not recognize that he was a law enforcement officer. Although each incident is not identical—as Rodella notes, none of the other incidents involved a chase, use of physical force or violence, or a charge of excessive force—they are similar enough that they affect the likelihood that Rodella acted willfully during the incident that resulted in the charged offense.

United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6911573, at *16 (D.N.M. Sept. 21, 2014) (citations omitted), aff'd 804 F.3d 1317 (10th Cir. 2015).

In United States v. Brown, an off-duty police officer ordered a truck-driver to exit his truck; when the truck driver refused, the officer yanked him out of the truck, punched and kicked him while he was on the ground, then put a gun to his head and threatened to kill him if he told anyone what happened. 250 F.3d 580, 583 (7th Cir. 2001). The prosecution offered into evidence, under Rule 404(b), a prior incident in which the defendant, while moonlighting as a bouncer at a lounge, beat up an exotic dancer after she questioned his authority. The Seventh Circuit affirmed the admission of the 404(b) evidence, despite the lack of factual similarity, reasoning: "Given the government's theory that Brown intended to punish people who defied his authority, we believe that the [404(b)] incident is probative of Brown's retaliatory intent to use excessive force whenever his orders are ignored or his authority questioned." Id. at 585.

The same reasoning applies in this case: the 404(b) incidents, while arising out of factually distinct scenarios, demonstrate Defendant Corder's motive and intent to punish people who disrespect him, and a willingness to abuse his official authority to do so. The probative value of this evidence is especially high because the charged statute is a specific-intent crime; because Defendant Corder's intent cannot readily be inferred from the nature of his criminal act; and because Defendant Corder's intent is likely to be a central, contested issue in the case.

### 2. The 404(b) evidence is not substantially more prejudicial than probative

Defendant Corder argues that the 404(b) incidents should be excluded for the additional reason that they are substantially more prejudicial than probative. According to Defendant Corder, the 404(b) evidence "cast[s] the defendant in a disparaging light," and its admission would result in "undue delay" and three separate mini-trials. (DN 25).

Defendant Corder's first argument—that the 404(b) incidents cast him in a negative light—proves too little. Most 404(b) evidence, by its nature, portrays the defendant in a negative light. The question, under this prong of the 404(b) analysis, is not whether the evidence portrays the defendant in a negative light, but whether prejudicial impact of the evidence is so extreme that it is risks inducing the jury to decide the case on an improper basis. See Fed. R. Evid. 403 advisory committee notes ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). The 404(b) evidence in this case depicts incidents that, unlike a graphic rape or bloody assault, are not inherently inflammatory, and, indeed, are arguably less inflammatory than the charged incident, so they are unlikely to compel the jury to render its verdict on an improper basis. See United States v. Blair, 225 F.3d 660 (6th Cir. 2000) (unpublished) (noting that evidence of the 404(b) assault "was more 'graphic,' 'horrendous,' and 'emotional'" than evidence of the charged assault); Rodella, 804 F.3d at 1334–35 ("To the extent Rodella is implying that this testimony would have caused the jury to find him guilty on the basis of its emotions or to punish Rodella for his involvement in the other acts, the fact of the matter is that Rodella's conduct towards Tafoya was more severe than his conduct towards the drivers involved in the other three incidents."). Moreover, unfair prejudice "does *not* mean the damage to a defendant's case that results from the legitimate probative force of the evidence." United States v. Bonds, 12 F.3d

540, 567 (6th Cir. 1993); see also United States v. Houston, 813 F.3d 282, 291 (6th Cir. 2016). The legitimate probative force of the government's 404(b) evidence is to show Defendant Corder's motive and intent to retaliate against people who disrespect him, and his willingness to abuse his official authority to do so. Defendant Corder has not identified any prejudice apart from that which results from the legitimate probative force of the evidence.

Defendant Corder's second concern—that evidence of the 404(b) incidents will cause undue delay and result in three separate mini-trials, which, in turn, would risk confusing the jury—is well-taken. To avoid such an outcome, which would prejudice the government just as much, if not more than, the defense, the government will pare down its 404(b) evidence to the fewest number of witnesses necessary to establish its evidence of willfulness. The government estimates that it can complete its 404(b) evidence in four to five witnesses, and can complete its entire case-in-chief in three to four days. This streamlined presentation of evidence will not result in undue delay or distract the jury from the issues it is charged with deciding.

**3. The government's 404(b) notice contains sufficient detail to apprise Defendant Corder of the nature of the 404(b) incidents**

Defendant Corder argues that the government's 404(b) notice "is lacking in sufficient details to allow for proper analysis." (DN 25, at 6).

Rule 404(b)(2) provides: "On request by a defendant in a criminal case, the prosecutor must: (A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. R. Evid. 404(b)(2)(A). The Committee Notes elaborate that "no specific form of notice is required. . . . Instead, the Committee opted for a generalized notice provision which requires the prosecution to apprise the defense of the general nature of the evidence of extrinsic acts." Id., advisory committee's notes.

The government has satisfied its 404(b) obligations by providing detailed descriptions of the two 404(b) incidents at issue. (DN 21, at 5-8). "Nothing in Rule 404(b) requires the government to identity the witnesses who will testify about the Rule 404(b) evidence or the tangible evidence upon which the government may rely to introduce the Rule 404(b) evidence." United States v. Graham, 468 F. Supp. 2d 800, 802 (E.D.N.C. 2006); see also United States v. Cohen, No. CR. WDQ-14-0310, 2015 WL 2261661, at *31 (D. Md. May 7, 2015) ("Rule 404(b) does not require the government to identify the specific evidence on which it will rely or identify witnesses that will testify about the evidence."). The government does not intend to disclose the identity of every 404(b) witness until closer to trial because the government is concerned about the possibility of witness tampering. The government is prepared to share with the Court *ex parte* the specific bases underlying its witness tampering concerns.

### 4. Admission of the 404(b) evidence would not infringe Defendant Corder's Fifth Amendment rights

Defendant Corder further argues that admission of 404(b) evidence would infringe his Fifth Amendment right to remain silent. (DN 25, at 13). He offers no precedent supporting this position, and the government could find none. In the few cases the government could find discussing a defendant's Fifth Amendment rights vis-à-vis the admission of 404(b) evidence, courts have held, to the contrary, that the admission of 404(b) evidence has no bearing on a defendant's Fifth Amendment right to remain silent. As the Fourth Circuit put it:

> Even assuming that the government's [404(b)] evidence did somehow put pressure on Kelly to take the stand (which he never actually did), his constitutional rights were not infringed. Evidence by its nature builds pressure to rebut it—that's what the adversary system is about. "That the defendant faces ... a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."

United States v. Kelly, 592 F.3d 586, 594 (4th Cir. 2010); see also United States v. Kot, 583 F. App'x 716, 719 (9th Cir. 2014); United States v. Rosario-Diaz, 202 F.3d 54, 71 (1st Cir. 2000).

## CONCLUSION

For the reasons laid out in the government's Motion to Admit 404(b) Evidence, the government respectfully requests an *in limine* order ruling that the government's evidence of two prior incidents in which Defendant Corder abused his official authority to retaliate against citizens who disrespected him is admissible under Federal Rule of Evidence 404(b).

Respectfully submitted,
VANITA GUPTA
PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
UNITED STATES DEPARTMENT OF
JUSTICE

*s/ Christopher J. Perras*
Christopher J. Perras
Trial Attorney
Criminal Section
Civil Rights Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
(202) 353-1130

JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5016 (Tel.)
(502) 582-5067 (Fax)

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 31, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel to the defendant, Donald Meier.

            *s/ Amanda E. Gregory*
            Amanda E. Gregory
            Assistant U.S. Attorney