IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:15-CR-141-DJH |
| | ) | *Electronically Filed* |
| MATTHEW B. CORDER | ) | |

## GOVERNMENT'S TRIAL MEMORANDUM

The United States of America, by and through the undersigned Assistant United States Attorney and Trial Attorney, respectfully submits this trial memorandum in accordance with the previous order of the Court.

## I.    STATUTE INVOLVED AND ELEMENTS OF OFFENSES

Counts One and Two of the Indictment charge violations of 18 U.S.C. § 242.   To establish a violation of that statute, the Government must prove:

First:  The defendant deprived a person of a constitutionally protected right;

Second:  The defendant acted willfully; and

Third:  The defendant acted under color of law.

See 18 U.S.C. § 242; United States v. Lanier, 520 U.S. 259, 264 (1997) (citing Screws v. United States, 325 U.S. 91 (1945)).  Additionally, for a felony violation, such as charged in Count One, the Government must also prove:

Fourth:  Either that "bodily injury result[ed] from the acts committed" or that "such acts include[d] the use, attempted use, or threatened use of a dangerous weapon." 18 U.S.C. § 242.

### A.      Color of Law

The first element the Government must prove is that the defendant acted "under color of law."  A law enforcement officer acts under color of law if he is performing his official duties, purporting to perform those duties, or giving the appearance of performing those duties, even if he misuses or abuses his official authority by doing something the law forbids.  See Screws, 325 U.S. at 111 ("It is clear that under 'color' of law means under 'pretense' of law . . . . Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it.").

### B.      Deprivation of a Constitutional Right

The second element the Government must prove is that the defendant deprived a person of a constitutional right.  Lanier, 520 U.S. at 264.  Section 242, like its civil counterpart, 42 U.S.C. § 1983, is not a source of any substantive rights, but rather serves as a vehicle for punishing violations of rights "made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them."  Screws, 325 U.S. at 104; see also Lanier, 520 U.S. at 265 (explaining that, "in lieu of describing the specific conduct it forbids, [§ 242]'s general terms incorporate constitutional law by reference").

Counts One and Two of the Indictment allege that Defendant Corder deprived D.B. of his Fourth Amendment right to be free from unreasonable seizures, which includes several rights pertinent here: the right to be free from seizure by a law enforcement officer without probable cause, United States v. Epley, 52 F.3d 571, 576 (6th Cir. 1995), the right to be free from warrantless arrest in one's home absent consent or exigent circumstances, Payton v. New York, 445 U.S. 573, 589 (1980), and the right to be free from malicious prosecution, Webb v. United States, 789 F.3d 647, 659 (6th Cir. 2015).  Those three rights were clearly established well

before the date Defendant Corder is charged with violating them.  See Donovan v. Thames, 105

F.3d 291, 297–98 (6th Cir. 1997) ("It is clearly established that an arrest without probable cause

violates the Fourth Amendment.") (citing Beck v. Ohio, 379 U.S. 89, 90–91 (1964)); Smith v.

Stoneburner, 716 F.3d 926, 933 (6th Cir. 2013) (holding that it had been "clearly established" for

decades that "a double presumption guard[s] against warrantless entries into a home to arrest a

misdemeanor suspect"); Spurlock v. Satterfield, 167 F.3d 995, 1006 (6th Cir. 1999) (holding that

the right to be free from malicious prosecution was "clearly established," reasoning that "a

reasonable police officer would know that fabricating probable cause . . . would violate a

suspect's clearly established Fourth Amendment right to be free from unreasonable seizures" and

that "unlawfully detaining a suspect, despite the fact that the evidence used to detain that

individual was fabricated, would also be unlawful").

### C.     Willfulness

The third element the Government must prove is that the defendant acted "willfully,"

which has a specific meaning in the § 242 context: that the defendant acted "in open defiance or

in reckless disregard" of a clearly established constitutional right.  Screws v. United States, 325

U.S. 91, 105 (1945).  The Government need not prove that the defendant was aware of the

specific constitutional provision that his conduct violated, or that his primary goal was to deprive

a person of a constitutional right.  Id. at 106; United States v. O'Dell, 462 F.2d 224, 232 n.10

(6th Cir. 1972).  Rather, the Government must show that the defendant was aware of the rights at

issue and either knew that he was violating them or recklessly disregarded that possibility.  See,

e.g., United States v. Dise, 763 F.2d 586, 592 (3d Cir. 1985); see also United States v. Couch, 59

F.3d 171 (6th Cir. 1995) (unpublished).

3

### D.      Aggravating factor

To prove a felony violation of § 242, as alleged in Count One, the Government must prove one of two statutorily enumerated aggravating factors: either that "bodily injury result[ed]" from the act committed in violation of the statute, or that act "include[d] the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire."  18 U.S.C. § 242.

## II.      GOVERNMENT'S STATEMENT OF FACTS

Counsel for the United States and defense counsel conferred regarding facts.  Defense counsel stated there were no undisputed facts.  Below is the Government's version of facts.

On the evening of October 22, 2014, D.B. drove home after work and found a patrol car parked in front of his trailer.  Defendant Matthew Corder, then a Deputy with the Bullitt County Sheriff's Office ("BCSO"), was sitting in the driver's seat.  D.B. parked on his front lawn, walked up the steps to his front porch, and asked Defendant Corder what was going on.  Defendant Corder, who had been dispatched to the location to respond to a disturbance at a different trailer, told D.B. to mind his own business.  D.B. informed Defendant Corder that his patrol car was parked in D.B.'s spot, and asked him to please move it to one of the other open spaces.  Defendant Corder responded that the road was public property and that he had a right to be there.  Frustrated by Defendant Corder's attitude, D.B. told Defendant Corder to "fuck off."  Defendant Corder asked, "What did you just say?"  D.B. repeated himself, then walked into his trailer.

What happened next was captured by Defendant Corder's body camera.  Defendant Corder walked up the steps of D.B.'s front porch, and banged on the front door.  When D.B. opened the door, Defendant Corder ordered him to come outside.  D.B. refused.  Defendant Corder said, "You're gonna come out here or you're gonna be issued [a citation]."  D.B. again

4

refused to come outside, and stated that Defendant Corder could not come inside without a warrant.  Defendant Corder said, "I don't need no warrant, dude.  Right now you were out here hollering at me, and you ran in, which means there's exigent circumstances, so back yourself out here."  When D.B. did not move, Defendant Corder reached inside, grabbed D.B. by the arm, and attempted to yank him outside.  D.B. braced his other arm against the door frame, and reiterated that Defendant Corder was not allowed inside his house without a warrant.  Defendant Corder stepped inside the trailer and wrestled D.B. to the ground.  Defendant Corder said, "I ain't playing with you.  You're about to get your ass tased."  D.B.  said, "Would you please listen?"  Defendant Corder ordered him to put his hands behind his back.  When D.B. refused, Defendant Corder tased him in the neck, the side, and the back.  D.B. yelled out in pain, and his pregnant step-sister, who overheard the struggle from the next room, began sobbing.  Defendant Corder handcuffed D.B., yanked him up, and led him outside.  D.B. apologized to Defendant Corder for swearing at him.  "Fuck that," Defendant Corder replied, "You get to go to jail tonight."  Defendant Corder escorted D.B. to the patrol car.  Defendant Corder said, "I told you that you was gonna get tased, didn't I, if you didn't put your hands behind your back?"  D.B. said, "that's why I was asking you why . . ."  Defendant Corder responded, "You know why, Slick.  You sit up there and tell me to fuck off?"  D.B. asked Defendant Corder how long he was going to be locked up.  Defendant Corder told him, "I don't know and I don't care. . . . Tell someone to fuck off. . . What planet do you ever think that was gonna fucking go?"  Defendant Corder shoved D.B. into the backseat of the patrol car.  "Next time you tell a police officer to fuck off," Defendant Corder said, "you might want to think about it."

Defendant Corder drove D.B. to jail and charged him with three offenses: disorderly conduct in the second degree, in violation of KY. REV. STAT. ANN. § 525.60; fleeing and evading

police in the second degree, in violation of KY. REV. STAT. ANN. § 520.100; and resisting arrest, in violation of KY. REV. STAT. ANN. § 520.90. Disorderly conduct in the second degree makes it a crime to make unreasonable noise or engage in threatening behavior in a public place with the intent to cause public inconvenience, annoyance, or alarm. KY. REV. STAT. ANN. § 525.60(1). Statutory commentary expressly provides that "a person may not be arrested for disorderly conduct as a result of activity which annoys only the police." KY. REV. STAT. ANN. § 525.060, 1974 Kentucky Crime Commission/LRC Commentary. Fleeing and evading in the second degree makes it a crime for a suspect to intentionally flee from or evade an officer who has reasonable suspicion to believe that the suspect has committed a crime; and for the suspect, in so doing, to create a substantial risk of physical injury. KY. REV. STAT. ANN. § 520.100(1)(a).

Defendant Corder had been trained on the elements of disorderly conduct and fleeing and evading. Knowing that he could not legally charge D.B. with disorderly conduct without evidence of public alarm, Defendant Corder falsely stated in the arrest citation that the incident "caused alarm to neighbors." Knowing, similarly, that he could not legally charge D.B. with fleeing and evading without evidence that D.B. actually fled from him, Defendant Corder falsely stated in the arrest citation that Baize "to evade[,] ran inside [his] trailer."

At D.B.'s arraignment the next day, which was video-recorded, a pretrial services official recommended, based on her finding that D.B. did not pose a danger to society, that he be released on his own recognizance. The presiding judge reviewed the charges and factual allegations in Defendant Corder's arrest report and, in reliance on that report, found that D.B. posed a danger to the community, and correspondingly denied D.B.'s request to be released on his own recognizance. D.B. sat in jail pending trial.

6

Meanwhile, Defendant Corder's supervisor at BCSO reviewed Defendant Corder's arrest report and body camera video of the arrest, and concluded that the charges Defendant Corder filed against D.B. were unsupported by the evidence.  A BCSO representative recommended to the Bullitt County Attorney's Office to drop the charges against D.B.  After reviewing the evidence, the prosecuting attorney agreed and dropped the charges, but by that time the damage was already done: D.B. had spent two weeks in jail, was fired from his job, and ultimately was evicted from his home.

## III.   ANTICIPATED SUBSTANTIVE ISSUES OF LAW

At this time, the Government does not anticipate any substantive issues of law.

## IV.   ANTICIPATED EVIDENTIARY ISSUES

### A.   Defendant Corder's out-of-court statements

During its case-in-chief, the Government may offer into evidence relevant portions of recorded statements by Defendant Corder, including excerpts from his body camera video, from his arrest report, from an audio-recording of a meeting between Defendant Corder and his supervisor, and from his merit-board hearing.  All of these statements have been disclosed to the defense in their entirety.  Anticipating that the defense may object to the admission of excerpts of these statements, or may seek to admit the statements in their entirety, the Government offers the following discussion of the evidentiary issues that the recorded statements implicate.

Out-of-court statements made by a defendant are admissions, not hearsay, when offered against the defendant by the prosecution.  Fed. R. Evid. 801(d)(2).  To constitute an admission under any of the bases described in Federal Rule of Evidence 801(d)(2), a statement need only be relevant and offered against the defendant by the prosecution; it need not be against the defendant's interest.  United States v. Townsend, 206 F. App'x 444, 450 (6th Cir. 2006)

("Notwithstanding the appearance of the word 'admission' in the heading of Rule 801(d)(2), there is no requirement that a party's out-of-court statement be a confession or statement against interest to be admissible against the party in trial."). Conversely, a defendant's out-of-court statement is inadmissible hearsay when offered by the defense. United States v. Kerley, 784 F.3d 327, 342 (6th Cir. 2015).

Federal Rule of Evidence 106, commonly referred to as the rule of completeness, provides a limited exception to the rule that a defendant may not put into evidence his own out-of-court statements without taking the stand and subjecting himself to cross-examination. The rule provides that when one party introduces "a written or recorded statement" or any portion thereof, an adverse party may introduce another part of that recorded statement, provided that the part offered by the adverse party "ought in fairness to be considered contemporaneously with it." Fed. R. Evid. 106. The rule was designed to avoid "the misleading impression created by taking matters out of context." Fed. R. Evid. 106 advisory committee's note.

The rule of completeness comes into play only if a party offers an excerpt of a statement that gives a misleading impression; it does not automatically require, any time an excerpt is introduced, the admission of the statement in its entirety. See United States v. Ford, 761 F.3d 641, 652 (6th Cir. 2014); United States v. Adams, 722 F.3d 788, 826 (6th Cir. 2013); United States v. Costner, 684 F.2d 370, 373 (6th Cir. 1982). To permit defendants to admit their own self-serving statements in this way would allow them to testify without being subjected to cross-examination—precisely the harm that the hearsay rules were designed to prevent. United States v. Willis, 759 F.2d 1486, 1501 (11th Cir. 1985). This would allow defendants to "effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing

cross-examination, or being subjected to first-hand scrutiny by the jury." United States v. McDaniel, 398 F.3d 540, 545 (6th Cir. 2005).

### B.        Character evidence and jury nullification

It is a common defense strategy in federal color-of-law prosecutions to offer evidence or argument regarding the defendant-officer's good character to suggest that, even if the defendant-officer broke the law, the jury should overlook his misconduct as a single mistake on an otherwise exemplary record of law enforcement service.  The Government has no indication that the defense intends to do so in this case, but nonetheless offers the following discussion of how the rules governing character evidence apply in this case.

First, the defense may offer character evidence that Defendant Corder is a good person or was a good police officer, under Rule 404(a)(2)(A), but such evidence must be presented in the form of opinion or reputation testimony only, under Rule 405(a).  Accordingly, evidence, if any, of awards or commendations Defendant Corder earned during his career in law enforcement are not admissible because, under Rule 405, the character traits they evince are neither pertinent to, nor an essential element of, the civil-rights charges against him. See United States v. Washington, 106 F.3d 983, 999–1000 (D.C. Cir. 1997) (per curiam) (police officer's commendations ruled inadmissible because the defendant's "dedication, aggressiveness and assertiveness" as an officer was neither "pertinent" to, nor an "essential element" of, bribery, conspiracy, or drug and firearms offenses with which he was charged); United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1990) (trial court properly excluded evidence of a police officer's prior commendations because "the traits which they purport to show—bravery, attention to duty, perhaps community spirit—were hardly 'pertinent' to the crimes [of perjury and conspiracy to commit mail fraud] of which [the defendant] stood accused"); United States v. Warren, No. 10-

154, 2010 WL 4668345, at \*3–\*4 (E.D. La. Nov. 4, 2010) (excluding evidence of officers' prior good acts and commendations because they did not show character traits pertinent to the civil rights and obstruction charges against them); United States v. Brown, 503 F. Supp. 2d 239, 244 (D.D.C. 2007) (noting that an officer's commendations, even if relevant to the criminal charges, are "neither opinion nor reputation testimony and accordingly are more akin to specific instances of conduct which may only be offered '[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense'") (citing Fed. R. Evid. 405).

Second, if the defense elects to put Defendant Corder's character in issue, the Government is entitled to respond in two ways: by cross-examining the character witness about specific instances of conduct probative of the character trait at issue, Rule 405(a), and by calling its own character witnesses in rebuttal, Rule 404(a)(2)(A).  See United States v. Monteleone, 77 F.3d 1086, 1089 (8th Cir. 1996) ("[T]he defendant is free to present evidence, in the form of opinion or reputation testimony, of pertinent favorable character traits. Where the defendant chooses this perilous path, though, he opens the door for the prosecution to introduce in rebuttal its own opinion or reputation evidence regarding the defendant's character. Furthermore, the Government may challenge the defendant's character witnesses by cross-examining them about their knowledge of relevant specific instances of the defendant's conduct.") (citations and internal quotation marks omitted).

Third, if the defense elects to introduce evidence of Defendant Corder's good character, the defense may use such evidence for the narrow purpose of supporting the argument that a person of his character would not have committed the charged crimes.  See Michelson v. United States, 335 U.S. 469, 476 (1948).  By contrast, the defense may not use character evidence to support the argument that, even if Defendant Corder broke the law, the jury should overlook his

misconduct as a single mistake on an otherwise exemplary record of law enforcement service. That would invite the jury to nullify, and courts have "categorically reject[ed] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent." United States v. Thomas, 116 F.3d 606, 615 (2d Cir. 1997); see also United States v. Trujillo, 714 F.2d 102, 106 (11th Cir. 1983) ("In arguing the law to the jury, counsel is confined to principles that will later be incorporated and charged to the jury. . . . [A] jury nullification argument would have encouraged the jurors to ignore the court's instruction and apply the law at their caprice. While we recognize that a jury may render a verdict at odds with the evidence or the law, neither the court nor counsel should encourage jurors to violate their oath."); United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993) ("[N]either the court nor counsel should encourage jurors to exercise [jury nullification]. . . . A trial judge, therefore, may block defense attorneys' attempts to serenade a jury with the siren song of nullification."). Just as the prosecution may not argue to the jury that it should convict because the defendant is a bad person or a bad police officer, Old Chief v. United States, 519 U.S. 172, 181 (1997), neither is the defense permitted to argue directly or otherwise imply that the jury should overlook a defendant's misconduct because he was otherwise a good person or police officer, see United States v. Melton, No. 3:08cr107-DPJ-LRA, 2008 WL 4829893, at *2 (S.D. Miss. Nov. 4, 2008) (excluding evidence of a defendant police officer's reputation for fighting crime on the ground that it was "aimed at inducing jury nullification").

Having no indication that defense counsel is seeking to offer character evidence or mount a jury nullification defense, the Government does not seek an *in limine* ruling; the Government seeks only to flag the issue for the Court's attention and consideration prior to trial.

### C.    State court stipulation to probable cause

If the Court denies defendant's pending motion regarding the stipulation of probable cause in <u>Commonwealth of Kentucky v. D.B.</u>, the United States will file a motion *in limine* to exclude any mention of the stipulation to probable cause at trial to avoid confusing the jury.

## V.    ANTICIPATED TRIAL PROBLEMS

At this time, the United States does not anticipate any problems at trial.

## VI.    CONCLUSION

WHEREFORE, the Government respectfully submits this trial memorandum to give the Court an overview of the charges and supporting evidence, and to address potential evidentiary issues in advance of trial.  The Government's Proposed Jury Instructions, Proposed Voir Dire, and Exhibit List will be filed separately; while the Government's Witness List will be submitted for the Court's *in camera* review.

_____

Respectfully submitted,

VANITA GUPTA
PRINCIPAL DEPUTY ASSISTANT
ATTORNEY GENERAL
CIVIL RIGHTS DIVISION
U.S. DEPARTMENT OF JUSTICE

*s/ Christopher J. Perras w/ permission*
Christopher J. Perras
Trial Attorney
Criminal Section
Civil Rights Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
(202) 353-1130

12

JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5016 (Tel.)
(502) 582-5067 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel to the defendant.

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant U.S. Attorney

13