IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 3:15-CR-141-DJH |
| | ) | *Electronically Filed* |
| MATTHEW B. CORDER | ) | |

## <u>GOVERNMENT'S PROPOSED JURY INSTRUCTIONS</u>

The United States of America, by and through the undersigned Assistant United States Attorney and Trial Attorney, respectfully submits these proposed jury instructions in accordance with the previous order of the Court. The first instruction is a proposed preliminary instruction, to be given prior to the testimony of the Government's first witness. The remaining proposed instructions are standard instructions to be given at the conclusion of all evidence.

<u>PROPOSED PRELIMINARY INSTRUCTION</u>

Once you have heard all of the evidence in this case, I will give you legal instructions to tell you what law you are to apply to the facts that you find.  Although the majority of my legal instructions to you will come at the end of the case, there are a few things that I need to tell you before you hear from the government's first witness:

As I instructed you earlier, the Indictment alleges, among other things, that Defendant Matthew Corder arrested D.B. for, and charged him with, two Kentucky crimes without having probable cause to believe that D.B. had committed those crimes.

During this trial, you will hear evidence about Defendant Corder's training on those Kentucky crimes and the rules regarding the authority of police officers to make arrests.  The government's first two witnesses, instructors at the police academy, are going to testify about what they taught Defendant Corder about these Kentucky crimes, as well as the rules regarding arrests.  You may consider the testimony of these trainers in determining whether or not Defendant Corder acted with the required criminal intent—which we will discuss later at the end of this case—when he arrested D.B.

However, it is I, and not these witnesses, who is tasked with instructing you regarding the law that you are to follow in this case.  For that reason, I am going to instruct you now on the elements of the Kentucky crimes for which Defendant Corder arrested D.B., as well as on the rules regarding when a police officer may and may not make an arrest.  These legal instructions are the ones that you must follow when you deliberate at the end of this case.  If this next witness, or any other witness, describes the law differently than I describe it to you now, you are to assume that these instructions from me are correct.

The two Kentucky crimes at issue are "second-degree disorderly conduct" and "second-degree fleeing and evading."

The Kentucky offense of "second-degree disorderly conduct" has three elements: (1) engaging in disorderly behavior, (2) in a public place, and (3) with the intent to cause, or wantonly creating a risk of causing, public inconvenience, annoyance, or alarm.  A person may not be arrested for the offense of disorderly conduct for engaging in conduct that annoys only the police because, under the statute, the police are not considered members of the public; and also because the First Amendment to the Constitution grants people freedom to oppose or challenge police action without risking arrest.

The Kentucky offense of "second-degree fleeing and evading" has five elements: (1) a peace officer has reasonable suspicion that a pedestrian committed a crime; (2) the officer orders the pedestrian to stop; (3) the pedestrian knowingly or wantonly disobeys the officer's order to stop, (4) the pedestrian acts with the specific intent to elude or flee, and (5) the pedestrian, in fleeing, creates a substantial risk of physical injury to any person.  Mere flight from an officer attempting to make an arrest, where the flight does not create a substantial risk of physical injury, is outside the scope of this statute.

A police officer may not arrest a person for those offenses, or any other offenses, unless there is probable cause to believe that the person committed a crime.  Probable cause is present if an objectively reasonable police officer under the circumstances would conclude that there was a fair probability that a person had committed or was committing a crime.  If a police officer seeks to arrest a person in his or her own home, there are additional requirements that must be met. A police officer may not enter a person's home to arrest a person unless one of three things are true: (1) the officer gets an arrest warrant authorized by a judge, (2) the person gives the officer

3

consent to enter his or her home, or (3) there is an emergency situation.  An emergency situation

may include a serious threat to someone's health or safety, the imminent destruction of evidence,

or the hot pursuit of a fleeing suspect.

Keep those rules in mind as you hear the evidence in this case.  At the end of this case,

after you have heard all of the evidence, I will elaborate on those rules, and give you further

instructions on how to apply those rules to the evidence to reach your verdict.

**Authority**:

KY. REV. STAT. ANN. § 525.60(1) ("A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he: (a) Engages in fighting or in violent, tumultuous, or threatening behavior; (b) Makes unreasonable noise; (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.").

KY. REV. STAT. ANN. § 525.060 ("It should again be stressed that the statute requires public alarm as distinguished from private alarm. For example, a person may not be arrested for disorderly conduct as a result of activity which annoys only the police."), cited with approval by *Pulley v. Commonwealth*, 481 S.W.3d 520, 529 (Ky. Ct. App. 2016).

*Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 215–16 (6th Cir. 2011) (holding that no reasonable officer could believe that he had probable cause to arrest a man for disorderly conduct for calling the officer a "fat slob," reasoning that "Kentucky law does not criminalize arguments and noise that disturb only police officers because such conduct does not risk public alarm," and even if it did, "the Constitution prohibits states from criminalizing conduct that disturbs solely police officers").

KY. REV. STAT. ANN. § 520.100(1)(a) ("A person is guilty of fleeing or evading police in the second degree when . . . As a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop, given by a person recognized to be a peace officer who has an articulable reasonable suspicion that a crime has been committed by the person fleeing, and in fleeing or eluding the person is the cause of, or creates a substantial risk of, physical injury to any person[.]").

*Lydian v. Com.*, No. 2009-CA-001339-MR, 2010 WL 3927814, at *4 (Ky. Ct. App. Oct. 8, 2010), *as modified* (Dec. 29, 2010) ("[U]nder KRS 520.100, the elements of second-degree fleeing or evading police are: 1. A pedestrian with intent to elude or flee, 2. knowingly or wantonly disobeys a direction to stop, 3. given by a person recognized to be a peace officer, 4. who (peace officer) possesses an articulable reasonable suspicion that a crime has been

4

committed by the pedestrian, and 5. the pedestrian, by fleeing or eluding, causes or creates a substantial risk of physical injury to a person.").

*Johnson v. Com.*, No. 2011-SC-000491-MR, 2013 WL 2297105, at *3 (Ky. May 23, 2013) ("[M]ere flight from an officer attempting to effect an arrest is not within the scope of the penal law.") (citing KRS 520.100 Kentucky Crime Commission/LRC Commentary).

U.S. Const., amend. IV, cl. 1 ("The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.").

*Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) ("This Court has stated the general rule that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime. The standard of probable cause, with roots that are deep in our history, represent[s] the accumulated wisdom of precedent and experience as to the minimum justification necessary to make the kind of intrusion involved in an arrest reasonable under the Fourth Amendment.") (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)) (internal citations and quotation marks omitted).

*Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) ("To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'").

*Payton v. New York*, 445 U.S. 573, 585, 589 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . . To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.").

*Missouri v. McNeely*, 133 S. Ct. 1552, 1570 (2013) ("[T]here is a hot pursuit exception to the warrant requirement as well.  In *United States v. Santana*, 427 U.S. 38 (1976), and *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967), we recognized 'the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons.'").

*Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) (explaining the contours of the "hot pursuit" exception, and holding that where an officer reached through the doorway of a suspect's home to arrest him after he allegedly committed a misdemeanor offense, no reasonable officer could have concluded that exigent circumstances justified the warrantless seizure, noting that all the suspect did was voluntarily end a consensual encounter and walk into his home; "[t]o call that choice 'flight' would make a fugitive out of any citizen who exercises his right to end a voluntary conversation with a police officer").

PROPOSED INSTRUCTION NO. 1

The defendant has been charged with two crimes.  The number of charges is no evidence of guilt, and this should not influence your decision in any way.  It is your duty to separately consider the evidence that relates to each charge, and to return a separate verdict for each one. For each charge, you must decide whether the government has presented proof beyond a reasonable doubt that the defendant is guilty of that particular charge.

Your decision on one charge, whether it is guilty or not guilty, should not influence your decision on the other charge.

**Authority:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 2.01A.*

PROPOSED INSTRUCTION NO. 2

**Elements of Counts 1 and 2**

Counts 1 and 2 of the Indictment charge the defendant with separate violations of Title 18, United States Code, Section 242.  For you to find the defendant guilty of the crime charged in Counts 1 and 2 of the Indictment, you must find that the government has proven each of the following three elements beyond a reasonable doubt:

*First*, that the defendant acted under color of law;

*Second*, that the defendant deprived someone in the United States of a right secured or protected by the Constitution or laws of the United States, in this case, the right of D.B. to be free from an unreasonable seizures, which includes the right not to be seized without probable cause, the right to be free from warrantless arrest in one's home absent consent or exigent circumstances, and the right be free from malicious prosecution; and

*Third*, that the defendant acted willfully.

For you to find the defendant guilty of the crime charged in Count 1, you must also find that the government has proven a fourth element beyond a reasonable doubt:

That the offense resulted in bodily injury or involved the use, attempted use, or threatened use of a dangerous weapon.

If you are convinced beyond a reasonable doubt that the government has proven all four elements with respect to Count 1, then you may say so by returning a guilty verdict on that charge.  Otherwise, you must find the defendant not guilty of that charge.  If you are convinced beyond a reasonable doubt that the government has proven all three elements with respect to Count 2, then you may say so by returning a guilty verdict on that charge.  Otherwise, you must find the defendant not guilty of that charge.

**<u>Authority</u>:**

18 U.S.C. § 242.

*Pattern Criminal Jury Instructions Fifth Circuit*, § 2.18 (Deprivation of Civil Rights) (2012) (modified).

*Federal Criminal Jury Instructions, Seventh Circuit*, 18 U.S.C. § 242 (Deprivation Of Rights Under Color of Law – Elements) (2012; rev'd 2013) (modified).

*Pattern Criminal Jury Instructions, Tenth Circuit*, § 2.17 (Deprivation of Civil Rights) (2011) (modified).

*United States v. Lanier*, 520 U.S. 259, 264 (1997) ("Section 242 is a Reconstruction Era civil rights statute making it criminal to act (1) willfully and (2) under color of law (3) to deprive a person of rights protected by the Constitution or laws of the United States.") (internal quotations and citation omitted).

*United States. v. Lanham*, 617 F.3d 873, 885 (6th Cir. 2010) ("Under 18 U.S.C. § 242, whoever, under color of any law willfully subjects any person to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or law of the United States has committed a federal crime.") (internal quotations, citations, and alterations omitted).

PROPOSED JURY INSTRUCTION NO. 3

**Element One - Color of Law**

The first element the government must prove with respect to Counts 1 and 2 is that the defendant acted under color of law.  A person acts under color of law if he is an official or employee of a federal, state, or local government and he uses or abuses power he possesses because of his official position.  A government official, such as a Deputy Sheriff, acts "under color of law" if he is performing his official duties, purporting to perform those duties, or giving the appearance of performing such official duties, even if he misuses or abuses his official authority by doing something the law forbids.

If you find that a defendant was employed as a Deputy Sheriff with the Bullitt County Sheriff's Office, and that he was acting, purporting to act, or giving the appearance of acting as a Deputy Sheriff, then you may find that he was acting under color of law.

**Authority:**

*Pattern Criminal Jury Instructions, Fifth Circuit*, § 2.18 (Deprivation of Civil Rights) (2012) ("Acting 'under color of law' means acts done under any state law, county or city ordinance, or other governmental regulation, and acts done according to a custom of some governmental agency. It means that the defendant acted in his official capacity or else claimed to do so, but abused or misused his power by going beyond the bounds of lawful authority.").

*Federal Criminal Jury Instructions, Seventh Circuit*, 18 U.S.C. § 242 (Definition of Color of Law) (2012, rev'd 2013) ("A person acts under "color of law" when he acts in his official capacity or purports or claims to act in his official capacity.  Action under color of law includes the abuse or misuse of the power possessed by the defendant by virtue of his [office; official position].").

*Pattern Criminal Jury Instructions, Tenth Circuit*, § 2.17 (Deprivation of Civil Rights) (2011; updated 2015) ("'Under color of law' means acts done under any state law, county or city ordinance, or other governmental regulation, and includes acts done according to a custom of some governmental agency.  It means that the defendant acted in his official capacity or else claimed to do so, but abused or misused his power by going beyond the bounds of lawful authority.").

*West v. Atkins*, 487 U.S. 42, 49-50 (1988) ("It is firmly established that a defendant . . . acts under color of state law when he abuses the position given to him by the State.  Thus, generally,

a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").

*Meadows v. Enyeart*, 2015 WL 5751563, at *4 (6th Cir. Oct. 1, 2015) ("Acting under color of state law requires that the defendant . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.") (internal quotations, citation, and alterations omitted).

PROPOSED JURY INSTRUCTION NO. 4

**Element Two – Deprivation of a Constitutional Right**

The second element the government must prove with respect to Counts 1 and 2 is that the defendant deprived a person in the United States of a right secured or protected by the Constitution or laws of the United States.  Counts 1 and 2 of the Indictment allege that the defendant deprived D.B. of his Fourth Amendment right to be free from unreasonable seizures in three distinct ways, each of which I'll explain to you in a moment.

The Fourth Amendment to the United States Constitution protects individuals from having their persons unreasonably seized by someone acting under color of law.  A seizure of a person occurs when a government official, such as a police officer, intentionally deprives the person of his or her freedom of movement.  For example, a police officer's voluntary conversation with a person is not a seizure; however, a police officer's act of grabbing a person to place him under arrest is a seizure.

A seizure of a person violates the Fourth Amendment if it is done in an objectively unreasonable manner.  Whether a seizure is objectively unreasonable must be judged from the perspective of a reasonable officer on the scene, faced with the same facts and circumstances as the defendant-officer, rather than with 20/20 hindsight.

One way in which a seizure may be unreasonable is if the officer making an arrest does not have probable cause to believe that the person arrested committed a crime.  Another way a seizure may be unreasonable is if the officer unlawfully enters a person's home to make an arrest.  Count 1 of the Indictment alleges that the defendant unreasonably seized D.B. in both of these ways.

Count 1 alleges that the defendant seized D.B. by initiating an arrest, and that the defendant's seizure was unreasonable because the defendant did not have probable cause to

believe that D.B. had committed the Kentucky offenses of "second-degree disorderly conduct" and "second-degree fleeing and evading" for which the defendant eventually arrested him. Probable cause is a legal term that I will now define for you.  Probable cause to arrest exists if an objectively reasonable police officer would conclude based on all of the surrounding circumstances that there was a fair probability that the person being arrested had committed or was committing a crime.  In order for you to evaluate whether the defendant had probable cause to seize D.B. by initiating his arrest, you must consider the elements of the offenses for which the defendant eventually arrested him.

The first Kentucky offense at issue, second-degree disorderly conduct, has three elements: (1) engaging in disorderly behavior, (2) in a public place, and (3) with the intent to cause, or wantonly creating a risk of causing, public inconvenience, annoyance, or alarm.  A person may not be arrested for the offense of second-degree disorderly conduct if the only person annoyed by his conduct is a police officer because, under the statute, the police are not considered members of the public, and also because the First Amendment to the Constitution grants people freedom to verbally oppose or challenge police action without risking arrest.

The second Kentucky offense at issue, second-degree fleeing and evading, has five elements: (1) a peace officer has reasonable suspicion that a pedestrian committed a crime; (2) the officer orders the pedestrian to stop; (3) the pedestrian knowingly or wantonly disobeys the officer's order to stop, (4) the pedestrian acts with the specific intent to elude or flee, and (5) the pedestrian, in fleeing, creates a substantial risk of physical injury to any person.  Under Kentucky law, a person's decision to end a voluntary conversation with a police officer is not considered "fleeing."  Additionally, even if a person flees from an officer attempting to make an arrest, that

flight does not amount to "fleeing and evading" if it does not create a substantial risk of physical injury.

If you find that the defendant seized D.B., and that an objectively reasonable officer in the defendant's position would not have had probable cause to believe that D.B. had committed a crime, including the two offenses I just described to you, then you may find that the defendant's initial seizure of D.B. was unreasonable and violated the Fourth Amendment.  Otherwise, the defendant's initial seizure of D.B. was reasonable and did not violate the Fourth Amendment.

Count 1 alleges that the defendant's arrest of D.B. was unreasonable for the additional reason that the defendant unlawfully entered D.B.'s home to make the arrest.   A seizure occurring in a person's home is afforded the highest constitutional protection because a person's right to live in, and retreat to, his or her home is at the very core of the interest protected by the Fourth Amendment.   Accordingly, a police officer may not enter a person's home to seize or arrest the person unless at least one of three things is true: (1) the officer has an arrest warrant authorized by a judge, (2) the person gives the officer consent to enter his or her home, or (3) there is an emergency situation.  The specific emergency situation identified by the defendant in this case is known as the "hot pursuit" exception.  The "hot pursuit" exception applies if an officer sees a crime occur in a public area and chases the fleeing suspect into a home.  The "hot pursuit" exception does not apply, however, if a person chooses to end a voluntary conversation with a police officer and walk into his own home.

If you find that the defendant entered D.B.'s home without a warrant and without D.B.'s consent, and that an objectively reasonable officer in the defendant's position would not have believed that there was an emergency situation justifying the defendant's warrantless entry, then you may find that the defendant's seizure of D.B. was unreasonable and violated the Fourth

Amendment.  Otherwise, the defendant's seizure of D.B. was reasonable and did not violate the Fourth Amendment.

The two alleged constitutional deprivations I have just described—the defendant's seizure of D.B. without probable cause to believe that he had committed a crime, and the defendant's unlawful entry into D.B.'s home to effect his arrest—are the constitutional deprivations alleged in Count 1 of the Indictment.  The government does not have to prove both of these deprivations in order for you to find that the defendant deprived D.B. of a constitutional right.  Proof beyond a reasonable doubt of either of these deprivations is enough, as long as you unanimously agree as to which deprivation occurred.

Count 2 of the Indictment alleges that the defendant deprived D.B. of his constitutional right to be free from unreasonable seizures in a third way: through malicious prosecution. Malicious prosecution occurs when someone acting under color of law, such as a police officer, charges a person with a crime without probable cause to believe that the person actually committed the charged crime, the officer's actions cause the person to suffer a deprivation of liberty apart from the initial arrest, and the charge against the person is ultimately dismissed.

If you find that the defendant charged D.B. with the Kentucky offenses of "second-degree disorderly conduct" and "second-degree fleeing and evading"; that an objectively reasonable officer in the defendant's position would have known that there was not probable cause to believe that D.B. had committed one or both of those offenses; that the defendant's act of charging D.B. with these offenses and his alleged inclusion of false and misleading information in the charging document caused D.B. to be detained in jail pending trial; and that the charges against D.B. were ultimately dismissed; then you may find that the seizure alleged in

14

Count 2 was unreasonable and violated the Fourth Amendment.  Otherwise, the seizure alleged

in Count 2 was reasonable and did not violate the Fourth Amendment.

**<u>Authority</u>**:

U.S. Const., amend. IV, cl. 1 ("The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated.").

*Scott v. Harris*, 550 U.S. 372, 381 (2007) ("[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied.").

*Ashcroft v. al-Kidd*, 563 U.S. 731, 735-36 (2011) ("An arrest, of course, qualifies as a 'seizure' of a 'person' under [the Fourth Amendment], and so must be reasonable under the circumstances.").

*Bailey v. United States*, 133 S. Ct. 1031, 1037 (2013) ("This Court has stated the general rule that Fourth Amendment seizures are reasonable only if based on probable cause to believe that the individual has committed a crime. The standard of probable cause, with roots that are deep in our history, represent[s] the accumulated wisdom of precedent and experience as to the minimum justification necessary to make the kind of intrusion involved in an arrest reasonable under the Fourth Amendment.") (citing *Dunaway v. New York*, 442 U.S. 200, 213 (1979)) (internal citations and quotation marks omitted).

*Robertson v. Lucas*, 753 F.3d 606, 618 (6th Cir. 2014) ("To state a Fourth Amendment false arrest claim, a plaintiff must 'prove that the arresting officer lacked probable cause to arrest the plaintiff.'").

KY. REV. STAT. ANN. § 525.60(1) ("A person is guilty of disorderly conduct in the second degree when in a public place and with intent to cause public inconvenience, annoyance, or alarm, or wantonly creating a risk thereof, he: (a) Engages in fighting or in violent, tumultuous, or threatening behavior; (b) Makes unreasonable noise; (c) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard, or other emergency; or (d) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.").

KY. REV. STAT. ANN. § 525.060 ("It should again be stressed that the statute requires public alarm as distinguished from private alarm. For example, a person may not be arrested for disorderly conduct as a result of activity which annoys only the police."), cited with approval by *Pulley v. Commonwealth*, 481 S.W.3d 520, 529 (Ky. Ct. App. 2016).

*City of Houston, Tex. v. Hill*, 482 U.S. 451, 462-63 (1987) ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.").

*Kennedy v. City of Villa Hills, Ky.*, 635 F.3d 210, 215–16 (6th Cir. 2011) (holding that no reasonable officer could believe that he had probable cause to arrest a man for disorderly conduct for calling the officer a "fat slob," reasoning that "Kentucky law does not criminalize arguments and noise that disturb only police officers because such conduct does not risk public alarm," and even if it did, "the Constitution prohibits states from criminalizing conduct that disturbs solely police officers").

*Sandul v. Larion*, 119 F.3d 1250, 1252 (6th Cir. 1997) (holding that no reasonable officer could believe that he had probable cause to arrest a man for disorderly conduct for swearing at and flipping off protestors, noting that well-established, decades-old Supreme Court precedent should "leave little doubt in the mind of a reasonable officer that the mere words and gesture 'f—k you' are constitutionally protected speech" and, without more, do not constitute a crime).

KY. REV. STAT. ANN. § 520.100(1)(a) ("A person is guilty of fleeing or evading police in the second degree when . . . As a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop, given by a person recognized to be a peace officer who has an articulable reasonable suspicion that a crime has been committed by the person fleeing, and in fleeing or eluding the person is the cause of, or creates a substantial risk of, physical injury to any person[.]").

*Lydian v. Com.*, No. 2009-CA-001339-MR, 2010 WL 3927814, at *4 (Ky. Ct. App. Oct. 8, 2010), *as modified* (Dec. 29, 2010) ("[U]nder KRS 520.100, the elements of second-degree fleeing or evading police are: 1. A pedestrian with intent to elude or flee, 2. knowingly or wantonly disobeys a direction to stop, 3. given by a person recognized to be a peace officer, 4. who (peace officer) possesses an articulable reasonable suspicion that a crime has been committed by the pedestrian, and 5. the pedestrian, by fleeing or eluding, causes or creates a substantial risk of physical injury to a person.").

*Johnson v. Com.*, No. 2011-SC-000491-MR, 2013 WL 2297105, at *3 (Ky. May 23, 2013) ("[M]ere flight from an officer attempting to effect an arrest is not within the scope of the penal law.") (citing KRS 520.100 Kentucky Crime Commission/LRC Commentary).

*Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (holding that the Court has "emphasized that at the very core of the Fourth Amendment stands the right of a man to retreat into his own home.") (internal quotations and citations omitted).

*Silverman v. United States*, 365 U.S. 505, 511 (1961) ("The Fourth Amendment, and the personal rights which it secures, have a long history. At the very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.").

*Payton v. New York*, 445 U.S. 573, 585, 589 (1980) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . . To be arrested in the home involves not only the invasion attendant to all arrests but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, even when it is accomplished under statutory authority and when probable cause is clearly present.").

16

*Missouri v. McNeely*, 133 S. Ct. 1552, 1570 (2013) ("[T]here is a hot pursuit exception to the warrant requirement as well.  In *United States v. Santana*, 427 U.S. 38 (1976), and *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294 (1967), we recognized 'the right of police, who had probable cause to believe that an armed robber had entered a house a few minutes before, to make a warrantless entry to arrest the robber and to search for weapons.'").

*Smith v. Stoneburner*, 716 F.3d 926, 931 (6th Cir. 2013) (explaining the contours of the "hot pursuit" exception, and holding that where an officer reached through the doorway of a suspect's home to arrest him after he allegedly committed a misdemeanor offense, no reasonable officer could have concluded that exigent circumstances justified the warrantless seizure, noting that all the suspect did was voluntarily end a consensual encounter and walk into his home; "[t]o call that choice 'flight' would make a fugitive out of any citizen who exercises his right to end a voluntary conversation with a police officer").

*Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (To establish a Fourth Amendment violation under a malicious prosecution theory, the government must prove four elements: (1) that the defendant made, influenced, or participated in the decision to prosecute the victim; (2) that there was no probable cause for the criminal prosecution; (3) that, as a consequence of the legal proceedings, the victim suffered a deprivation of liberty apart from the initial arrest; and (4) that the criminal proceeding was resolved in the victim's favor.).

*Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir. 1999) (holding that the right to be free from malicious prosecution was "clearly established," reasoning that "a reasonable police officer would know that fabricating probable cause . . . would violate a suspect's clearly established Fourth Amendment right to be free from unreasonable seizures" and that "unlawfully detaining a suspect, despite the fact that the evidence used to detain that individual was fabricated, would also be unlawful").

*Apsey v. Chester Twp.*, 608 F. App'x 335, 339 (6th Cir. 2015) ("While probable cause to arrest on *any* crime precludes a false arrest claim, probable cause to prosecute must be established with respect to *each* charge brought by a prosecutor to preclude a malicious prosecution claim.").

*Sykes v. Anderson*, 625 F.3d 294, 314–15 (6th Cir. 2010) ("[I]t certainly was Sgt. Anderson's arrest that started the chain of events that ultimately led to the prosecutor's decision to proceed with the criminal charges against the Plaintiffs.  Looking at causation more narrowly, Sgt. Anderson reasonably could have foreseen that by providing false information to the prosecutor that bore directly on whether there was probable cause to believe that the Plaintiffs committed a crime, his misconduct could result in not only the Plaintiffs' initial seizure but also their eventual incarceration.").

PROPOSED JURY INSTRUCTION NO. 5

**Element Three - Willfulness**

The third element the government must prove with respect to each count is that the defendant acted willfully.  A person acts willfully if he acts voluntarily and intentionally, with the specific intent to do something the law forbids.  You may find that the defendant acted willfully if you find that he acted in open defiance or reckless disregard of D.B.'s right to be free from unreasonable seizure.  In other words, the defendant acted willfully if he seized D.B. knowing or recklessly disregarding the possibility that the seizure was constitutionally unreasonable.

Intent is a state of mind, which can often be proven only by circumstantial evidence.  Ordinarily, a defendant's state of mind cannot be proven directly because no one can read another person's mind and tell what that person is thinking.  But a defendant's state of mind can still be proven indirectly from the surrounding circumstances.

In determining whether the defendant acted willfully, you may consider any facts or circumstances you deem relevant to shed light on what was in the defendant's mind.  For example, you may consider the manner in which any constitutional violation was carried out and the duration of any constitutional violation.  You may also consider what the defendant said; what the defendant did or failed to do; how the defendant acted; and whether the defendant knew, through training or experience, that his actions violated law or department policy.

In considering the defendant's state of mind, you may infer that the defendant intended the natural and probable results of any acts he knowingly took or knowingly failed to take.  In other words, you may infer that the defendant intended the consequences that a reasonable law enforcement officer, standing in similar circumstances and possessing similar knowledge, would have expected to result from his actions.  However, it is entirely up to you to decide what facts to find and what inferences to make from the evidence.

18

It is not a defense that the defendant may also have been motivated by anger or some other emotion, provided that the intent that I have described to you was present.  You may, however, consider such motivations -- as well as any malice displayed by the defendant -- in determining whether the defendant acted willfully, as I have described that term to you.

**Authority:**

*Williams v. United States*, 341 U.S. 97, 102 n.1 (1951) (reciting, with approval, trial court's instructions that the jury was "entitled to consider all the attendant circumstances: the malice, if any, of the defendants toward these men; the weapon used in the assault, if any; and the character and duration of the investigation, if any, of the assault, if any, and the time and manner in which it was carried out. All these facts and circumstances may be taken into consideration from the evidence that has been submitted for the purpose of determining whether the acts of the defendants were willful and for the deliberate and willful purpose of depriving these men of their Constitutional rights to be tried by a jury just like everyone else.").

*Screws v. United States*, 325 U.S. 91, 106 (1945) ("The fact that the defendants may not have been thinking in constitutional terms is not material where their aim was not to enforce local law but to deprive a citizen of a right and that right was protected by the Constitution.  When they so act they at least act in reckless disregard of constitutional prohibitions or guarantees.").

*United States v. Couch*, 1995 WL 369318, 4 (6th Cir. 1995) (upholding similar instruction and stating "the charge as given adequately conveyed that requirement.  As long as the accused specifically intends to use more force than is reasonable under the circumstances, he acts willfully and thus runs afoul of § 242.  Furthermore, *Screws* recognizes that a defendant need not necessarily be 'thinking in constitutional terms' if his aim was to deprive an individual of a constitutionally protected right.") (internal citation omitted).

*Crews v. United States*, 160 F.2d 746, 749 (5th Cir. 1947) (holding that § 242 offense was complete "even though the defendant was also actuated by personal anger, hate, malice, and a desire for revenge.").

2 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, *Federal Jury Practice and Instructions* § 29.05 (6th ed. 2008) (pattern instruction: "it is not necessary for the government to prove that the defendant knew that this action would actually violate anyone's constitutional rights.").

*Sixth Circuit Pattern Jury Instruction (2015) No. 2.08* ("Ordinarily, there is no way that a defendant's state of mind can be proved directly, because no one can read another person's mind and tell what that person is thinking. . . .   But a defendant's state of mind can be proved indirectly from the surrounding circumstances.  This includes things like what the defendant

said, what the defendant did, how the defendant acted, and any other facts or circumstances in evidence that show what was in the defendant's mind.).

*Federal Criminal Jury Instructions, Seventh Circuit*, § 242 (Rights) (1999) (pattern instruction: "The defendant need not have known that [this; these] right[s] [was; were] secured by the Constitution or the laws of the United States.").

<u>PROPOSED JURY INSTRUCTION NO. 6</u>

**<u>Element Three – Willfulness - Limiting Instruction re Policies and Training</u>**

The government has introduced evidence of training the defendant received at the Kentucky Department of Criminal Justice Training and the Bullitt County Sheriff's Office. This evidence has been admitted for a limited purpose. You may use it only to determine whether any defendant acted willfully, as I have just described that word to you.

It is, of course, wholly up to you to determine whether the defendant violated any rule or acted in contravention of his training. If you find any defendant acted in contravention of policies or training, then I caution you that not every instance of inappropriate behavior on the part of a Sheriff's Deputy rises to the level of a federal constitutional violation. It is possible for a law enforcement officer to violate department policy or act contrary to his training without violating the United States Constitution, just as it is possible for an officer to violate the Constitution without violating a specific state law or policy. For this reason, proof that a defendant violated policy or acted contrary to training is relevant to your determination of willfulness, but is not relevant to your determination that the defendant violated D.B.'s constitutional rights.

In other words, if you determine that the defendant violated a policy of the Bullitt County Sheriff's Office or acted contrary to his training, you should consider that evidence only in determining whether that defendant acted willfully; you should not consider that evidence in determining whether the defendant's actions violated the Constitution in the first instance.

**<u>Authority:</u>**

*Altman v. High Point, N.C.*, 330 F.3d 194, 208 (4th Cir. 2003) ("But not every instance of inappropriate behavior on the part of police rises to the level of a federal constitutional violation.").

*United States v. Mayo*, 1997 WL 657009, *2 (4th Cir. 1997) (conviction upheld, over argument that evidence was insufficient to support finding of willful deprivation of rights, when, inter alia, prison officials testified that there were procedures in place for handling unruly inmates; none of which included beating the inmate).

*United States v. Simmons*, 470 F.3d 1115, 1125 (5th Cir. 2006) (upholding admission of evidence that defendant police officer, who had raped woman after traffic stop, had failed to follow proper department procedure in logging in evidence relating to underlying stop and emphasizing relevance of evidence to consciousness of guilt).

*Woodard v. Andrus,* 419 F.3d 348, 353 (5th Cir. 2005) (agreeing with district court's decision that the "violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights.").

*Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (holding that states are free to enact laws that are more protective of individual rights than the United States Constitution, and that "a mere violation of such a state law will not establish a proper claim under § 1983.") (internal quotations and citations omitted).

*United States v. Brown*, 250 F.3d 580, 586 (7th Cir. 2001) (affirming conviction and relying on defendant's failure to file a report as per police department policy, as proof of defendant's specific intent).

*United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) ("The officers' violation of state law is not, without more, necessarily a federal constitutional violation.").

*United States v. Rodella,* 804 F.3d 1317, 1338 (10th Cir. 2015) (criminal case noting, with approval, that  the district court gave the jury a specific instruction "regarding the training ... Rodella personally received," informing the jury it could use evidence "only to determine whether ... Rodella acted willfully ... to violate a right protected by the Constitution of the United States.").

PROPOSED JURY INSTRUCTION NO. 7

**Element Four - Bodily Injury and Use of a Dangerous Weapon and Unanimity Instruction**

Finally, with respect to Count 1, and only with respect to Count 1, you must decide whether the government has proved beyond a reasonable doubt that the defendant's conduct resulted in bodily injury to D.B. or involved the use of a dangerous weapon.

Count 1 of the Indictment charges both that the offense resulted in bodily injury to D.B. *and* that the offense involved the use of a dangerous weapon.  However, the government does not have to prove *both* that the offense resulted in bodily injury and that a dangerous weapon was used.  Proof beyond a reasonable doubt of one of these factors is enough to prove this element, as long as all twelve of you agree that the same factor has been proved.  That is, all of you must agree that the government proved beyond a reasonable doubt that the offense resulted in bodily injury; or, all of you must agree that the government proved beyond a reasonable doubt that the offense involved the use of a dangerous weapon.  If all of you unanimously agree that the government has proven one or both of these factors beyond a reasonable doubt, then this element has been satisfied.

"Bodily injury" includes any injury to the body, including physical pain or a physical injury, such as a cut, abrasion, bruise, fracture, or disfigurement.  The injury need not be significant, severe, or permanent.  The government does not need to prove that a defendant intended to cause bodily injury, or that a defendant's acts were the sole cause of bodily injury.

A "dangerous weapon" is any instrument capable of inflicting death or serious bodily injury, including extreme physical pain.

**<u>Authority</u>:**

18 U.S.C. § 242.

*Pattern Criminal Jury Instructions, Fifth Circuit,* § 1.25 (Unanimity of Theory*)* (2012) (modified).

18 U.S.C. § 831(f)(5) (defining "bodily injury" to mean "(A) a cut, abrasion, bruise, burn, or disfigurement; (B) physical pain; (C) illness; (D) impairment of a function of a bodily member, organ or mental faculty; or (E) any other injury to the body, no matter how temporary").

18 U.S.C. § 1365(h)(4) (same).

18 U.S.C. § 1515(a)(5) (same).

18 U.S.C. § 1864 (d)(2) (same).

*United States v. Bailey,* 405 F.3d 102, 111 (1st Cir. 2005) (applying these statutes to § 242).

*United States v. Perry,* 401 Fed.Appx. 56, 65, 2010 WL 4569866, 8 (6th Cir. 2010) ("The term bodily injury means: 1) a cut, abrasion, bruise, burn, or disfigurement; 2) physical pain; 3) illness; 4) the impairment of the function of a bodily member, organ, or mental faculty; or 5) any other injury to the body, no matter how temporary.").

2 Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, *Federal Jury Practice and Instructions*, § 24.07 (6th ed. 2008) (Deadly or dangerous weapon—Defined) ("The phrase 'deadly or dangerous weapon' means any instrument or device capable of inflicting serious bodily injury or causing the death of a person.").

*Pattern Criminal Jury Instructions, Fifth Circuit,* § 2.09 (2012) (defining deadly or dangerous weapon for purposes of 18 U.S.C. § 111) ("The term 'deadly or dangerous weapon' includes any object capable of inflicting death or serious bodily injury. For such a weapon to have been 'used,' it must be proved that the defendant not only possessed the weapon but that the defendant intentionally displayed it in some manner while carrying out the forcible assault.").

*United States v. Agron,* 921 F.2d 25, 26 (2d Cir. 1990) (holding stun gun a dangerous weapon in non-242 context).

*United States v. Wallace,* 800 F.2d 1509, 1513 (9th Cir. 1986) (holding stun gun a dangerous weapon in non-§ 242 context).

PROPOSED INSTRUCTION NO. 8

Next, I want to say a word about the date mentioned in the indictment.

The indictment charges that the crimes happened "on or about" October 22, 2014, as to Count 1, and October 23, 2014, as to Count 2.  The government does not have to prove that the crime happened on those exact dates.  But the government must prove that the crime happened reasonably close to those dates.

**Authority:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 2.04.*

PROPOSED INSTRUCTION NO. 9

That concludes the part of my instructions explaining the elements of the crime.  Next I will explain some rules that you must use in considering some of the testimony and evidence.

**<u>Authority</u>:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 7.01.*

PROPOSED INSTRUCTION NO. 10

You have heard the testimony from some witnesses who testified to both facts and opinions.  Each of these types of testimony should be given the proper weight.

As to the testimony on facts, consider the factors discussed earlier in these instructions for weighing the credibility of witnesses.

As to the testimony on opinions, you do not have to accept any witness's opinion.  In deciding how much weight to give it, you should consider the witness's qualifications and how the witness reached his or her conclusions along with the other factors discussed in these instructions for weighing the credibility of witnesses.

Remember that you alone decide how much of a witness's testimony to believe, and how much weight it deserves.

**Authority:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 7.03A.*

PROPOSED INSTRUCTION NO. 11

You have heard testimony that the defendant committed acts other than the ones charged in the indictment.  If you find the defendant did those acts, you can consider the evidence only as it relates to the government's claim on the defendant's intent.  You must not consider it for any other purpose.

Remember that the defendant is on trial here only for the crimes charged in the Indictment, not for the other acts.  Do not return a guilty verdict unless the government proves the crimes charged in the indictment beyond a reasonable doubt.

**Authority:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 7.13.*

<u>PROPOSED INSTRUCTION NO. 12</u>

Your verdict, whether it is guilty or not guilty, must be unanimous.

To find the defendant guilty, every one of you must agree that the government has overcome the presumption of innocence with evidence that proves his guilt beyond a reasonable doubt.

To find him not guilty, every one of you must agree that the government has failed to convince you beyond a reasonable doubt.

Either way, guilty or not guilty, your verdict must be unanimous.

**<u>Authority</u>:**

*Sixth Circuit Pattern Jury Instruction (2015) No. 8.03.*

Respectfully submitted,

VANITA GUPTA
PRINCIPAL DEPUTY
ASSISTANT ATTORNEY
GENERAL
CIVIL RIGHTS DIVISION
UNITED STATES DEPARTMENT
OF JUSTICE

Christopher Perras
Trial Attorney
Criminal Section
Civil Rights Division
U.S. Department of Justice
601 D Street NW
Washington, DC 20004
(202) 353-1130

JOHN E. KUHN, JR.
UNITED STATES ATTORNEY

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant United States Attorney
717 West Broadway
Louisville, Kentucky 40202
(502) 582-5016 (Tel.)
(502) 582-5067 (Fax)

## CERTIFICATE OF SERVICE

I hereby certify that on June 27, 2016, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the counsel to the defendant.

*s/ Amanda E. Gregory*
Amanda E. Gregory
Assistant U.S. Attorney