UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| v. | CRIMINAL ACTION NO. 3:15-CR-141-DJH |
| MATTHEW B. CORDER | DEFENDANT |

### MOTION TO ENTER PROPOSED RESTITUTION ORDER
*Electronically Filed*

The United States of America, by and through undersigned counsel, respectfully requests the Court enter the attached Order of Restitution. On July 22, 2016, a federal jury returned a guilty verdict against Matthew Corder for two counts of willfully depriving a person of constitutional rights under color of law. As established below, Corder's actions caused his victim, D.B., to lose a total of at least $8,242.53. At the time of his false arrest, D.B. lost $46.43 in cash. After his arrest, D.B. was suspended from his job and lost at least $1,696.10 in wages as a result. Due to financial hardship caused by Corder's crime, D.B. eventually lost his mobile home, valued at $6,500. As these loss amounts are established by a preponderance of the evidence, the Court should enter the attached restitution order.

### RELEVANT FACTS

On October 7, 2016, the United States filed its Sentencing Memorandum regarding Corder. DN 61. The United States' memorandum incorporated by reference the recitation of the offense conduct from the presentence report ("PSR"). *See* DN 61, page 1. Facts provided in the PSR remain accurate and are hereby incorporated into this motion. After the sentencing hearing on the matter, the Court issued a Judgment and Commitment Order requiring Corder to serve a twenty-seven-month term of imprisonment followed by a one-year period of supervised released

and ordered him to pay a $125 special assessment. DN 71. The Court deferred the determination of restitution, awaiting additional information about the victim's losses. *Id.* Accordingly, the victim's losses are follows:

### Cash Loss - $46.43

At the time of his booking, D.B. had $46.43 on his person, which was seized by the Bullitt County Jail. (*See* paragraph 3 of the Affidavit of Special Agent Paul Sparke, attached hereto as Exhibit A.) While Bullitt County records do not show exactly what happened to D.B.'s money, Bullitt County Jailer Martha Knox told an FBI agent that at least $25.00 would have been taken to pay for processing and that the rest would have been placed on D.B.'s "books" in the jail. *Id.* D.B. lost the cash on his person as a direct result of his false arrest by Corder.

### Lost Wages - $1,669.10

After he was unlawfully arrested, D.B. struggled with unemployment and under-employment due to his arrest record, leading to a loss of at least $1,669.10 in wages. On September 26, 2014, about a month before his arrest, D.B. began training for a new position with G&C Communications. (*See* Letter from G&C Communications President, Brian Wallace, attached hereto as Exhibit B.) Because of his arrest and charges pending against him, D.B. was disqualified from working at G&C Communications from late October 2014 until mid-March 2015. *Id.* D.B. returned to work at G&C Communications for a brief period from March to May in 2015. *Id.* During his suspension from G&C Communications, after he was released from jail, D.B. worked a temporary warehouse job through Kelly Services, Inc. from December 2, 2014 to February 4, 2015, when the position ended. (*See* Kelly Services Employment and Earnings Summary, attached hereto as Exhibit C.) Had he not been arrested, D.B. should have been able

to earn approximately $6,400 during the twenty-week period for which he was suspended, even without overtime or bonus compensation.[1] Instead, he earned $4,703.90 in the course of his temporary job (Ex. C), leaving a deficit of $1,669.10 in lost wages.

After separating from G&C Communications in May 2015, D.B. has gone through periods of being unemployed or severely under-employed, which he attributed to the arrest record resulting from his false arrest by Corder. Ex. A, ¶ 2. Wage records maintained by the Kentucky Education and Workforce Development Cabinet ("OET") confirm that, since his arrest in October 2014, D.B. has earned only a fraction of his average earnings prior to his arrest. (*See* OET Wage Data for D.B., as of December 21, 2016, attached hereto as Exhibit D.) While it is impossible to determine precisely what D.B. would have earned had he not been unlawfully arrested by Corder, the stark difference between his average quarterly earnings before and after his arrest shows that D.B.'s income has diminished dramatically since then. The United States examined the difference between D.B.'s average quarterly earnings before and after his arrest to calculate an estimated deficit of up to $50,843.84 in wages between the date of the offense and Corder's sentencing.[2]

Considering D.B.'s drop in income and the fact that his arrest record—and resulting gaps in his employment—could impede his earning potential for many years to come, the lost wage restitution sought for D.B. in the amount of $1,669.10 is extremely conservative.

---

1 This gross pay estimate is calculated assuming fulltime work (40 hours/week) at the base pay rate of $8/hour (*see* Ex. B).
2 The United States arrived at its estimate by comparing D.B.'s average quarterly earnings from the ten quarters prior to his arrest in the 4th Quarter of 2014 ($8,371.37) and his average earnings in the eight quarters reported in OET records since his arrest ($2,015.89). These figures show a quarterly loss of $6,355.48 for eight quarters, resulting in an overall estimated loss of $50,843.84 from the 4th Quarter of 2014 through the 3rd Quarter of 2015.

**Mobile Home - $6,500**

D.B.'s incarceration, accompanied by his lost wages and deteriorating financial situation after his arrest, led to his eviction from his mobile home community and repossession of his mobile home, for an additional loss of $6,500. In July 2013, D.B. purchased a mobile home in Whispering Oaks Pointe mobile home community for $4,500 and executed a lease to reside in the community. (*See* Purchase Agreement and Lease, attached hereto as Exhibits E & F, respectively.) After his arrest and in the midst of his resulting employment problems, D.B. had difficulty paying his bills, leading him to borrow money from his father. (Ex. A, ¶ 2.) Despite his efforts, D.B. made several late rent payments late in the beginning of 2015 and eventually could not make his rent payments at all. (*See* Whispering Oaks Rent Ledger, attached hereto as Exhibit G.)

Approximately a year after his arrest, D.B. had an eviction order entered against him in October 2015. (*See* Forcible Detainer Judgment against D.B., dated October 16, 2015, attached hereto as Exhibit H.) D.B. was forced to abandon his mobile home at Whispering Oaks Pointe, losing the full purchase price of his property ($4,500). Further, D.B. represented to the Court and to the United States in his victim impact statement that he invested approximately $2,000 on improvements to his mobile home during the time that he lived at Whispering Oaks. (*See* Victim Impact Statement of D.B.) The loss of D.B.'s property can be directly linked to the lasting effects of Corder's offense conduct.

**ARGUMENT**

**I.     Legal Framework and Burden of Proof**

The United States has the burden by a preponderance of the evidence to demonstrate the

amount of the loss (restitution) sustained by a victim. 18 U.S.C. § 3664(e). "In determining the relevant facts, sentencing judges are not restricted to information that would be admissible at trial. Any information may be considered, so long as it has sufficient indicia of reliability to support its probable accuracy. Reliable hearsay evidence may be considered." *U.S. v. Herrera*, 928 F.2d 769, 773 (6th Cir. 1991) (citation and quotations omitted); *see also U.S. v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989). Specific findings in the imposition of restitution are not required. *U.S. v. Frost*, 914 F.2d 756, 774 (6th Cir. 1990). After the United States meets its burden regarding the amount of the loss, the defendant has the burden of demonstrating his financial resources and his financial needs. 18 U.S.C. § 3664(e). Depending on the defendant's financial resources and needs, the Court can order "a single, lump-sum payment, partial payments at specified intervals, in-kind payments, or a combination of payments at specified intervals and in-kind payments." *See* 18 U.S.C. § 3664(f)(3)(a). When the Court is considering a schedule for restitution payment, the Court must consider:

> (A) the financial resources and other assets of the Defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the Defendant;
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2).

Restitution is, however, mandatory, and thus, the Court must order restitution payments—even if the defendant establishes indigence. *U.S. v. Blanchard*, 9 F.3d 22, 25 (6th Cir. 1993). If the defendant's financial situation does "not allow the payment of any amount of a restitution order, and [does] not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments," then the court should order

nominal periodic payments.   18 U.S.C. § 3664(f)(3)(B).   Nevertheless, the payment of restitution "shall be the shortest time in which full payment can reasonably be made."   18 U.S.C. § 3572(d)(2).

### II. As a result of Corder's actions, D.B. lost $8,242.53; the Court must order Corder to pay him back in full.

Where, as here, the amount of loss attributable to the offense conduct is in dispute, the government may meet its burden of proof, under the MVRA, by introducing additional documentation establishing a victim's loss amount.   *See* 18 U.S.C. § 3664(d)(4).   Thus, the United States provided *Attachments A-H*, to show that D.B. suffered a direct cash loss of at least $46.43, has lost an estimated $1,669.10 in wages to date, and lost his mobile home, valued at $6,500—all due to his false arrest by Corder.   *See supra,* pp. 2-4, *see also Attachments A-H*.   A preponderance of the evidence, therefore, establishes that Corder owes D.B. $8,242.53.   The restitution order should require Corder to pay his victim for the full sum of that loss.

## CONCLUSION

As established above, the Court should enter the attached Restitution Order.

Respectfully submitted,

JOHN E. KUHN, JR.
United States Attorney

*/s/ Amanda E. Gregory*
AMANDA E. GREGORY
Corinne Keel
Assistant U.S. Attorneys
717 West Broadway
Louisville, Kentucky 40202
Phone: (502) 582-5016
Fax: (502) 582-5097

CHRISTOPHER PERRAS
Trial Attorney
U.S. Department of Justice
Civil Rights Division

## CERTIFICATE OF SERVICE

On January 4, 2017, the foregoing was filed using the CM/ECF filing system, which will serve opposing counsel via electronic mail.

*/s/ Amanda E. Gregory*
AMANDA E. GREGORY
Assistant U.S. Attorney

7