UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                                                             Plaintiff,

v.                                                               Criminal Action No. 3:15-cr-141-DJH

MATTHEW B. CORDER,                                                       Defendant.

\* \* \* \* \*

## ORDER

Following trial, a jury found Defendant Matthew Corder guilty of depriving D.B. of his rights under color of law in violation of 18 U.S.C. § 242. (Docket No. 50) Corder was sentenced to twenty-seven months in prison and ordered to pay an undetermined amount of restitution. (D.N. 71, PageID # 1068–70) This matter is now before the Court upon a motion from the United States requesting restitution for D.B. in the amount of $8,242.53. (D.N. 87)

**I.     BACKGROUND**

Defendant Corder arrested D.B. on October 22, 2014. (D.N. 90, PageID # 1481) When arrested, D.B. had $46.43 in cash on him, which was seized by the local jail. (D.N. 87, PageID # 1442) As a result of the arrest, D.B. lost his job at G&C Communications. (*Id*.) D.B. was "hired at a temporary job" from December 2, 2014 to February 4, 2015. (*Id*.) D.B. was then unemployed for over a month until he was rehired by G&C Communications on March 13, 2015. (*Id*.) D.B. worked at G&C Communications until May 2015. (*Id*., PageID # 1443) Since that time, the United States claims that D.B. has been either unemployed or "severely underemployed" because of his "arrest record resulting from his false arrest by Corder." (*Id*.)

The United States asserts that D.B.'s "lost wages and deteriorating financial situation after his arrest, led to his eviction from his mobile home community and repossession of his

1

mobile home." (*Id.*, PageID # 1444) The government states that D.B. purchased his mobile home for $4,500 and invested approximately $2,000 in improving the residence. (*Id.*) According to the government, D.B. then executed a lease to reside in a mobile home community but began falling behind on his rent in February 2015. (D.N. 90, PageID # 1481) The government states that D.B. was able to borrow money from his father that allowed him to "catch up for a period." (*Id.*) However, he "fell behind again and did not catch up after September 2015." (*Id.*) The government states that D.B.'s mobile home community "had an eviction order entered against him in October 2015." (D.N. 87, PageID # 1444) According to the United States, D.B. owed $1,650 in back rent, excluding late fees, when his mobile home was seized. (D.N. 90, PageID # 1480)

The United States has filed a motion for restitution seeking $46.43 for the lost cash, $1,669.10 for lost wages, and $6,500 for the loss of his mobile home.[1] (*Id.*) Defendant Corder does not object to restitution for the lost cash or lost wages, but objects to restitution for the loss of the mobile home. (D.N. 88) Corder argues that D.B.'s loss of his mobile home "is not a result of the offense conduct in this case." (*Id.*, PageID # 1473)

The United States argues that had D.B. not lost $1,669.10 in income, he would have been able to pay the $ 1,650 he owed in back rent. (D.N. 90, PageID # 1481) The United States adds that "it is not surprising that the financial impact of the arrest did not hit simultaneously, particularly because D.B. was able to borrow money from his father. (*Id.*) Therefore, the United States maintains that D.B.'s false arrest was the proximate cause of his eviction and loss of his mobile home. (*Id.*, PageID # 1480) Defendant Corder responds that D.B. was rehired at his

---

[1] The Court notes that no request for restitution has been made for the time he was wrongfully confined or for the money lent to D.B. by his father, other than that requested for the value of the mobile home.

original position on March 13, 2015 and was caught up on rent when he left G&C Communications; therefore, any eviction after that point was not caused by Corder's actions. (D.N. 88, PageID # 1474)

## II. DISCUSSION

The United States bears the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by a victim. 18 U.S.C. § 3664(e). The Supreme Court has held that 18 U.S.C. § 3664 "has a proximate cause requirement." *Robers v. United States*, 134 S. Ct. 1854, 1859 (2014). "The basic question that a proximate cause requirement presents is 'whether the harm alleged has a sufficiently close connection to the conduct' at issue." *Id*. (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014)). "Put differently, the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 134 S. Ct. at 1390. "Foreseeable causes usually do not break the causal chain." *United States v. Luis*, 765 F.3d 1061, 1068 (9th Cir. 2014).

The Court finds that the United States has met its burden of demonstrating the amount of lost cash and lost wages, but has failed to prove a loss of $6,500 for the mobile home. While D.B. initially lost his job because of the arrest, he returned to essentially the same job at G&C Communications on March 13, 2015. (D.N. 87, PageID # 1442) The government does not allege that D.B.'s departure from G&C Communications in May 2015 was due to his arrest. (*Id*.) Therefore, any issues with D.B.'s employment after March 13, 2015 are too remote from the defendant's unlawful conduct. *See Lexmark*, 134 S. Ct. at 1390. It was foreseeable that D.B. would lose his job as a result of the arrest; however, once D.B. returned to his job at G&C

Communications, his firing was a superseding event that was not caused by Corder and thus broke the causal chain. *See Luis*, 765 F.3d at 1068.

Therefore, in reviewing D.B.'s rent ledger with his mobile home community, he will be credited with losses that resulted from his unemployment prior to March 13, 2015. The transaction listing provided by the government begins on February 1, 2015. (D.N. 87-8) The listing shows that D.B. incurred late charges of fifty dollars on February 6, 2015 and March 6, 2015. (*Id.*) Because these late charges were incurred before D.B. was rehired, the Court finds these late fees are a result of his job loss due to his false arrest.

Additionally, according to the United States, D.B. made $241 per week and his rent was $330 per month, which leaves "very little excess in a monthly budget." (D.N. 90, PageID # 1481) The Court recognizes that it took time for D.B. to catch up on payments even after he was rehired. The transaction listing indicates that D.B. caught up on his rent in May 2015. Therefore, the Court will also require Defendant Corder to repay the three late fees that D.B. incurred from March 13, 2015 until he was caught up on his rental payments in May 2015.

By May 2015, D.B. was caught up on his rental payments and had been rehired at his original job. The government has not demonstrated that any losses sustained by D.B. after May 2015 were the result of his false arrest by Defendant Corder. Accordingly, the Court will award restitution in the amount of $46.43 for lost cash, $1,669.10 for lost wages, and $ 250.00 for late rental charges, for a total of $1,965.53.

### III. CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)   The United States' motion for restitution (D.N. 87) is **GRANTED in part** and **DENIED in part**.

(2)   The victim, D.B., will be awarded restitution in the amount of $1,965.53.

(3)   Defendant Corder's alternative motion for a hearing on the restitution issue (D.N. 89) is **DENIED as moot**.

February 15, 2017

David J. Hale, Judge
United States District Court

5