## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: February 12, 2018

Ms. Tovah R. Calderon
Mr. Vikram Swaruup
U.S. Department of Justice
Civil Rights Division, Appellate Section
P.O. Box 14403
Washington, DC 20044

Ms. Amanda E. Gregory
Office of the U.S. Attorney
717 W. Broadway
Louisville, KY 40202

Mr. Frank W. Heft Jr.
Mr. Donald Jay Meier
Western Kentucky Federal Community Defender, Inc.
629 S. Fourth Avenue, Suite 200
Louisville, KY 40202

Re: Case No. 16-6592, *USA v. Matthew Corder*
Originating Case No. : 3:15-cr-00141-1

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0072n.06

No. 16-6592

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
|  | ) | Feb 12, 2018 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | On Appeal from the United States |
|  | ) | District Court for the Western District |
| MATTHEW B. CORDER, | ) | of Kentucky |
|  | ) |  |
| Defendant-Appellant. | ) |  |
| _____/ | ) |  |

**BEFORE: GUY, GIBBONS, and COOK, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge**. Defendant Corder, a police officer, was indicted and convicted after a jury trial of willfully depriving Derek Baize of his constitutional right to be free from unreasonable seizure and malicious prosecution. 18 U.S.C. § 242. On appeal, defendant raises a number of alleged errors. After careful consideration of the issues raised we find there was no error requiring reversal, and we affirm.

## I. FACTS[1]

Late at night on October 22, 2014, Deric Baize arrived at his mobile home to discover that defendant Matthew Corder, a deputy with the Bullitt County Sheriff's Office, had parked his

---

[1] Although there are several issues in this appeal, the events of October 22, 2014 are primarily relevant to defendant's sufficiency claim. Accordingly, we state them in a light most favorable to the government. *United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012).

police cruiser in front of Baize's home in Baize's parking spot. (PageID # 657, 814, 818).  Baize

asked defendant what was going on, to which defendant told Baize to mind his own business.

(PageID # 658.)  Baize asked defendant to move his car, but defendant told Baize that he would

move his car when he was ready.  (PageID # 658.)  Baize admitted that he told defendant to

"fuck off" and began walking back into his house; defendant asked Baize to repeat himself, and

Baize stated "I did not stutter. I said 'fuck off.'"  (PageID # 658.)  At trial, the parties disputed

whether Baize was shouting during this exchange.  Baize conceded that he "raised his voice,"

because defendant asked him to repeat himself.  (PageID # 687.)  Baize's stepsister, who lived in

the same trailer as Baize with her boyfriend, testified that Baize's voice was "[a] little bit above

average, not too much, but not yelling."  (PageID # 712.)  No neighbor called the police or came

out of their home to complain. (PageID # 705.)

> Baize then walked into his home and closed the front door. (PageID # 658-59, 824-825,
357).  Defendant and Baize's roommate both testified that defendant ordered Baize to stop;
Baize testified that he did not hear that command.  (PageID # 376-79, 712, 688-689.)

> After Baize went inside, defendant activated his body camera and knocked on Baize's
screen door.  Baize opened his front door but left his screen door closed.  Defendant opened
Baize's screen door and told Baize to come outside "or there are going to be issues."  Baize
repeatedly refused, saying that defendant needed a warrant, but defendant responded that he did
not "need no warrant."  Defendant told Baize that "right now you're out here hollering at me and
you ran in there, which means there's exigent circumstances."  Baize again refused to come
outside.  Defendant reached inside Baize's home to grab Baize, who braced himself against his
doorjamb and said "you are not allowed in my house."  Defendant then entered Baize's home,
grabbed Baize by the back of the neck, and began to arrest him.  Defendant's fellow deputy,

Billy Allen, arrived and assisted with the arrest.  Defendant tased Baize into submission and completed the arrest.

Defendant prepared a post-arrest complaint charging Baize with three misdemeanors: disorderly conduct in the second degree, Ky. Rev. Stat. § 525.060; fleeing or evading in the second degree, Ky. Rev. Stat. § 520.100; and resisting arrest, Ky. Rev. Stat. § 520.090.  The post-arrest complaint operated as the charging document.  (PageID # 515, 739.)  In support of the first two charges, defendant alleged in the complaint that the "[i]ncident caused alarm to neighbors & occupants of trailer" and that Baize "to evade ran inside [his] trailer."

After reviewing defendant's charges and supporting allegations, the magistrate judge detained Baize on a $1500 cash bond.  The judge stated that she rejected the default unsecured bond because the complaint charged Baize with evading police and resisting arrest. (PageID # 794-95.)  Baize could not afford the cash bond and spent two weeks in jail.

On December 8, 2014, the prosecutor and Baize's public defender, without Baize's knowledge, agreed on an order of dismissal, which included the following:  "The Court notes that [Baize] stipulates that there was probable cause with respect to the charges herein."  (PageID # 250.)  It is undisputed that Baize never personally agreed to that stipulation.  Baize found out that his case had been dismissed when he arrived for his pretrial hearing several weeks later. (PageID # 669.)

## II. PROCEDURAL HISTORY

A grand jury returned a two-count indictment charging defendant with violating 18 U.S.C. § 242 by depriving Baize of his constitutional rights under color of law.  Count 1 charged that defendant violated Baize's right to be free from unreasonable seizures by seizing Baize without probable cause to believe a crime had been committed, and by unlawfully entering

Case No. 16-6592                                                              4
*United States v. Matthew B. Corder*

Baize's home to effect the seizure.  Count 2 charged that defendant violated Baize's right to be

free from unreasonable seizures, i.e., the right to be free from malicious prosecution, by charging

Baize with "disorderly conduct" and "fleeing and evading" without probable cause to believe

that Baize committed those crimes, and by knowingly including "false and misleading

information in the charging document," which caused Baize to be detained in jail. (PageID # 1-

2).  After a four-day trial, a jury convicted defendant of both counts.  (PageID # 310.)  The court

sentenced defendant to concurrent terms of 27 months of imprisonment on Count 1 and 12

months of imprisonment on Count 2.  (PageID # 1068.)

## III.  ANALYSIS

Defendant first argues that the jury did not hear sufficient evidence to convict on either

count under 18 U.S.C. § 242, because in his view the evidence only permits a conclusion that

Baize was, in fact, disturbing the peace and fleeing and evading, which justified an arrest and

prosecution.  Defendant also takes issue with two of the jury instructions, asserting that one of

them misstated § 242's  mental-state requirement and the other misstated the physical boundary

at which police must recognize the Fourth Amendment's protection of the home.  In his fourth

and fifth assignments of error, defendant challenges the district judge's evidentiary rulings, i.e.,

the decision to redact the stipulation in the state-court order dismissing the charges against Baize,

and the decision to permit the government to question him about prior lies he told to police

investigators in the 1990s.  Finally, defendant objects to the inclusion of an enhancement for

physically restraining the victim in the calculation of his Guidelines range.  We consider his

arguments in turn.

## A.  Sufficiency of the Evidence

We review de novo a district court's denial of a motion for
acquittal based on the insufficiency of the evidence, *United States*

> *v. Mabry*, 518 F.3d 442, 447 (6th Cir. 2008), and must affirm the
> district court's decision if, "after viewing the evidence in the light
> most favorable to the prosecution, any rational trier of fact could
> have found the essential elements of the crime beyond a reasonable
> doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Because
> we may not independently weigh the evidence or "substitute our
> judgment for that of the jury," *Johnson v. Mitchell*, 585 F.3d 923,
> 931 (6th Cir. 2009), a defendant making an insufficiency-of-the-
> evidence argument "bears a very heavy burden." *United States v.
> Daniel*, 329 F.3d 480, 485 (6th Cir. 2003).

*United States v. Cunningham*, 679 F.3d 355, 370 (6th Cir. 2012).

Count 1 of defendant's indictment, brought under 18 U.S.C. § 242, required the jury to find that defendant deprived Baize of his right "to be free from an unreasonable seizure[ ], which includes the right not to be arrested without probable cause, and the right to be free from warrantless arrests in one's home absent consent or exigent circumstances." (PageID # 1, 282). Count 2, brought under the same statute, required the jury to find that defendant deprived Baize of his right to be free from unreasonable seizures, which includes the right to be free from malicious prosecution. (PageID # 1-2, 284, 286-87.) Malicious prosecution occurred if defendant issued the arrest citation "without probable cause to believe that [Baize] actually committed the charged crime[s]."

"To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)).

Defendant's arrest citation charged Baize with disorderly conduct in the second degree, Ky. Rev. Stat. Ann. § 525.060(1)(b), which occurs when a person "[m]akes unreasonable noise." (PageID # 288.) Jury Instruction 13, which defendant does not challenge, establishes this as a

Case No. 16-6592                                                                                        6
*United States v. Matthew B. Corder*

fact question:  "When considering whether a noise is unreasonable under subpart (b), [the jury] may consider the time, place, and manner of the noise."  (PageID # 288.)

Defendant's sufficiency argument asks us to second-guess the jury's factual finding as to whether Baize generated noise that was unreasonable.  There was evidence that Baize did not generate noise that was unreasonable, including his testimony, the testimony of one of the trailer's other occupants, and the fact that no one in the neighborhood complained.  There was evidence to the contrary, as well, but the jury was entitled to find Baize credible and defendant not credible, and we may not independently weigh the evidence or substitute our judgment for that of the jury.  *Cunningham*, 679 F.3d at 370.  Defendant has not carried his "very heavy burden" to show that no rational trier of fact could have found that he lacked probable cause to arrest Baize for disorderly conduct.  *See id.*

Defendant also cited Baize for fleeing or evading in the second degree, Ky. Rev. Stat. Ann. § 520.100(1)(a).  To effectuate an arrest under that statute, a police officer must have probable cause to believe that the suspect,

> [1] with intent to elude or flee, . . .  [2] knowingly or wantonly disobeys a direction to stop, [3] given by a person recognized to be a peace officer [4] who has an articulable reasonable suspicion that a crime has been committed by the person fleeing, and [5] in fleeing or eluding the person is the cause of, or creates a substantial risk of, physical injury to any person.

(PageID # 289.)  We cannot say that no reasonable trier of fact could have found that defendant lacked probable cause to arrest Baize for fleeing or evading in the second degree.  Most important, the jury was entitled to find that defendant lacked even "an articulable reasonable suspicion that a crime [had] been committed by the person fleeing," i.e., disorderly conduct, based upon the evidence offered at trial.

Furthermore, we reject defendant's theory that the fifth element — "in fleeing or eluding the person is the cause of, or creates a substantial risk of, physical injury to any person" — was satisfied when Baize resisted arrest after returning to answer the door. For defendant to have had probable cause to arrest Baize for fleeing and evading, he must have had probable cause to believe that all of the elements of the crime were satisfied at the moment he sought the arrest. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015). By defendant's own account, however, the fifth element — Baize's creation of the risk — was not satisfied until *after* defendant initiated the arrest and Baize physically resisted. *See* Trial Tr. vol. II at 160:11-161:5 (defendant admits that he did not make the decision to arrest until "we were trying to bring [Baize] out [and] he resisted") (PageID # 832-33); Def. Br. at 18 ("The substantial risk of injury occurred when Baize resisted arrest . . . ."). It is therefore impossible, under defendant's theory, that defendant had probable cause to believe Baize had met all of the elements of fleeing and evading when defendant made the decision to arrest.

### B. Jury Instruction ("Public Place")

Count 1 permitted the jury to find defendant guilty if it concluded that he unreasonably seized Baize by arresting Baize in his home absent exigent circumstances or consent. (PageID # 282, 286.) The district court did not commit reversible error with respect to the jury instructions concerning the warrantless entry.

Defendant argues that Jury Instruction 12 was prejudicial because it denied the jury the opportunity to make the factual determination whether Baize was standing in his threshold — allegedly a "public place" not subject to the Fourth Amendment's protection of the home — when defendant initiated the arrest. He further argues that the jury instructions should have

reflected that any arrest initiated in the arrestee's threshold may be completed after the arrestee retreats within his home.

"When a party claims a jury instruction improperly or inaccurately stated the law, we review that claim de novo." *United States v. Roth*, 628 F.3d 827, 833 (6th Cir. 2011) (citing *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir.2010); *H.C. Smith Invs., L.L.C. v. Outboard Marine Co.*, 377 F.3d 645, 650 (6th Cir.2004)).   "On the other hand, '[a] district court's refusal to give a jury instruction is reviewed for abuse of discretion.'" *Id.* (quoting *H.C. Smith Invs., L.L.C.*, 377 F.3d at 650).   "A refusal to give requested instructions is reversible error only if (1) the instructions are correct statements of the law; (2) the instructions are not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the defendant's theory of the case." *United States v. Newcomb*, 6 F.3d 1129, 1132 (6th Cir. 1993) (citing *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991)).   We "will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless." *United States v. Adams*, 583 F.3d 457, 469 (6th Cir. 2009) (quoting *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000)).

Defendant proposed an instruction that provided in part:

> [T]he doorway of one's home is considered a "public place" where one has no reasonable expectation of privacy and is thus subject to a warrantless arrest. Even if the arrest occurs as a result of an officer reaching farther than the doorway area, the act of retreating into a home does not thwart an otherwise legal arrest pursuant to probable cause. If this is the case, the above restrictions relating to a police officer entering a home to make an arrest do not apply.

(PageID # 266.)   The district court rejected this proposed instruction.   Citing defendant's body camera footage, the judge stated, "really, I don't think a reasonable jury here can interpret . . . Mr. Baize as being in the doorway versus in the house." (PageID # 930.)   The judge also relied

*United States v. Matthew B. Corder*                                          9

on the Supreme Court's holding that "the Fourth Amendment has drawn a firm line at the
entrance to the house.  Absent exigent circumstances, that threshold may not reasonably be
crossed without a warrant."  *Payton v. New York*, 445 U.S. 573, 590 (1980).  The judge
ultimately instructed the jury, in part, as follows:

> Arrests that occur in someone's home are presumed unreasonable
> unless one of three things are true: (1) the officer gets an arrest
> warrant authorized by a judge; (2) the person gives the officer
> consent to enter his or her home; or (3) there is an emergency
> situation — often referred to as exigent circumstances. Emergency
> situations may include a serious threat to someone's health or
> safety, the imminent destruction of evidence, or the hot pursuit of a
> fleeing suspect. If you find that the defendant arrested Deric Baize
> in his home without a warrant, consent, and in the absence of an
> emergency situation, then you may find that the arrest at issue was
> unreasonable.

(PageID # 286-87.)

Defendant argues that *United States v. Santana*, 427 U.S. 38 (1976), compels a holding
that defendant could effectuate a warrantless arrest inside the home so long as it was lawfully
initiated while Baize was at his doorway, but that case is distinguishable.  In *Santana*, the police
approached the defendant's home already having probable cause to believe that the defendant
had committed a felony.  The defendant was found standing in the threshold of her home: "one
step forward would have put her outside, [and] one step backward would have put her in the
vestibule of her residence."  *Id.* at 40 n.1.  The police announced themselves, causing the
defendant to retreat into the vestibule.  The police followed her inside to complete the arrest.

*Santana* contained two separate holdings.  It first held that the threshold to the
defendant's home was "public," insofar as the defendant was "exposed to public view, speech,
hearing, and touch as if she had been standing completely outside her house." *Id.* at 42.  At that
point in time, it was proper to initiate a warrantless arrest.  In the second holding, the majority

held that the defendant was unable to thwart that arrest by retreating into her home; but this was only true under the circumstances because there was "a realistic expectation that any delay would result in destruction of the evidence." *Id.* at 43; *see also Kentucky v. King*, 563 U.S. 452, 462 (2011) ("[W]arrentless entry to prevent the destruction of evidence is reasonable and thus allowed."). Neither of these holdings are applicable to the instant case, and the district court did not abuse its discretion in declining to apply *Santana* and use defendant's requested jury instruction.

First, it was a proper exercise of discretion to conclude that no reasonable juror could agree with defendant's factual contention that Baize was standing in his threshold. A defendant is entitled to "some mention" of his theory in the jury instructions only when that theory "finds some support *in the evidence* and in the law . . . ." *United States v. Garner*, 529 F.2d 962, 970 (6th Cir. 1976) (emphasis added) (citing *United States v. Swallow*, 511 F.2d 514 (10th Cir. 1975)). Defendant's body camera shows Baize open his inner door, leaving the screen door shut. Defendant was unable to cross the threshold and touch Baize without opening the screen door himself (which he did), and all the while Baize remained several feet removed from his threshold, inside of his home. Baize was not exposed to the same degree of public view, speech, hearing, and touch as though he was on his porch. And we have presumed that a person who is near, but interior to, his doorway is entitled to the benefit of *Payton*'s "threshold" rule. *Smith v. Stoneburner*, 716 F.3d 926, 930 (6th Cir. 2013) ("Stoneburner admits that, by reaching across the doorway to grab Charles, he entered the house . . . .").

Defendant's proposed jury instruction is also legally flawed, as it incorrectly suggests that the hot-pursuit exception to the warrant requirement applies any time a suspect retreats into his home, no matter the circumstances. "Before agents of the government may invade the

sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) (citing *Payton*, 445 U.S. at 586). "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut . . . ." *Id.* "[I]f the presumption against warrantless entries stemming from minor crimes is to have any meaning, the exigency must be a serious one . . . ." *Stoneburner*, 716 F.3d at 931.

Even if defendant's proposed instruction contained a properly limited definition of the hot-pursuit exception, defendant fails to explain how the exception applied to his decision to enter Baize's home.  In Kentucky, second-degree disorderly conduct is a misdemeanor, Ky. Rev. Stat. § 525.060(2), and there was no physical evidence of disorderly conduct that Baize could have destroyed.  *See also Welsh*, 466 U.S. at 751 ("[T]he lower courts have looked to the nature of the underlying offense as an important factor to be considered in the exigent-circumstances calculus . . . .  For example, courts have permitted warrantless home arrests for major felonies if identifiable exigencies, independent of the gravity of the offense, existed at the time of the arrest.").  In *Stoneburner* — which involved a police officer who "held the door open, told [the retreating suspect] to stop and crossed the threshold of the doorway to grab [the suspect] by the wrist" — we rejected the officer's hot-pursuit argument, observing:

> Nor at any rate was the pursuit "hot" in any meaningful way.  No emergency necessitated immediate police action.  [The suspect] was not armed, a fact [the officer] knew because [the suspect] had just volunteered to let the officer pat him down . . . .  He was not violent. There was no ongoing public nuisance. There was no sign that anyone inside the house was injured or needed emergency aid. And [the suspect] had committed no other, more serious, crimes.

716 F.3d at 929, 931-32.

Defendant's preferred jury instruction was overbroad, and the district court did not err by refusing to give an instruction containing a misstatement of the law. Even if the instruction was properly limited, defendant fails to establish that he was in hot pursuit, given that Baize's alleged disorderly conduct was a non-ongoing, non-violent misdemeanor that lacked any destructible physical evidence. Finally, as noted above, defendant admitted at trial that he did not decide to arrest Baize until after he reached across Baize's threshold and Baize resisted — an admission that contradicts his claim that he entered the home with intent to arrest. *See* Trial Tr. vol. II at 160:11-161:5. (PageID # 832-33.)

**C. Jury Instruction ("Willfulness")**

To be convicted under either count brought pursuant to 18 U.S.C. § 242, defendant must have acted "willfully." (PageID # 282, 284.) Defense counsel tendered the following instruction defining willfulness:

> The word 'willfully' as that term is used in the indictment or in these instructions, means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is with bad purpose either to disobey or disregard the law.

(PageID # 193.) At the charge conference, defense counsel stated that, "if the court is not inclined to give my instruction on willfulness, I would object to any instruction on willfulness and ask the court to follow the recommendations in the Sixth Circuit and not give a general instruction on willfulness." (PageID # 923.) The district court ultimately instructed the jury as follows:

> The third element the government must prove with respect to each count is that the defendant acted willfully. A person acts willfully if he acts voluntarily and intentionally, with the specific intent to do something the law forbids. You may find that the defendant acted willfully if you find that he acted in open defiance or reckless

> disregard of Deric Baize's right to be free from unreasonable
> seizure. In other words, the defendant acted willfully if he seized
> Deric Baize knowing *or recklessly disregarding the possibility* that
> the seizure was constitutionally unreasonable.

(emphasis added.)  (PageID # 290.)  Defendant argues that the emphasized language defines willfulness too broadly.  The government disagrees, and it also argues that defendant's objection at the charge conference was not sufficiently specific to preserve this issue.  (Gov't Resp. at 46-48.)

   "When a party claims a jury instruction improperly or inaccurately stated the law, we review that claim de novo."  *Roth*, 628 F.3d at 833 (citing *Blanchard*, 618 F.3d at 571; *H.C. Smith Invs., L.L.C.*, 377 F.3d at 650).  This includes a defendant's claim that the court instructed the jury on the incorrect definition of a crime's required mental state.  *Id.*  "[W]e may reverse the trial court based on a faulty charge 'only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial.'"  *United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006) (quoting *United States v. Pensyl*, 387 F.3d 456, 458 (6th Cir. 2004)).

   "If no objection is made, or the objection is not sufficiently specific, we review the claimed defect in the instruction only for plain error."  *Id.* (citing Fed. R. Crim. P. 52(b)).  "In the context of challenges to jury instructions, '[p]lain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'"  *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006) (quoting *United States v. Combs*, 33 F.3d 667, 669 (6th Cir. 1994)).  "No single provision of the instructions can be reviewed in isolation; we must consider the charge as a whole."  *Pensyl*, 387 F.3d at 458 (citing *United States v. Lee*, 991 F.2d 343, 350 (6th Cir. 1993); *United States v. Prince*, 214 F.3d 740, 760-61 (6th Cir. 2000)).

Case No. 16-6592                                                                14
*United States v. Matthew B. Corder*

We agree with the government that defendant's objection was not preserved.  A party "must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d).  On appeal, defendant objects to the instruction's mention of "recklessness," as well as the implication that a mere "possibility" of unconstitutionality suffices to satisfy the willfulness requirement.  (Def. Br. at 45.)  At the charge conference, however, defense counsel made a blanket, general objection to *any* instruction on willfulness that did not mirror the one he proposed.  (PageID # 923.)  *See United States v. Semrau*, 693 F.3d 510, 527 (6th Cir. 2012) ("Merely proposing a jury instruction is insufficient to preserve an objection.") (citing *United States v. Carmichael*, 232 F.3d 510, 523 (6th Cir. 2000)).  And defendant does not indicate that he made any objection after the charge conference, once he knew the contents of the instruction the jury would hear.  (*See* Def. Reply at 15-16.) Accordingly, plain-error review applies.  *See* Fed. R. Crim. P. 52(b).[2]

Defendant's objection to the inclusion of the concept of "recklessness" in the instruction does not survive plain-error review.  Defendant himself acknowledges that "'[w]illfull' is synonymous with 'reckless,'" (Def. Br. at 44) and the Supreme Court has held that one acts willfully when acting "in reckless disregard of a constitutional requirement . . . ."  *Screws v.*

---

[2] At the charge conference, defendant argued that "willfulness" should not be defined at all. (PageID # 923-24.)  He claimed that "the Sixth Circuit does not recommend defining willfully." (PageID # 923.)   To the extent that this argument comprised a timely, specific objection to Instruction 15, it does not relate to the instant arguments concerning the phrase "recklessly disregarding the possibility."  Furthermore, it is a misstatement of the law.  The Sixth Circuit does not recommend that the jury receive no instruction on willfulness.  Rather, it eschews a generally applicable definition in favor of a case-specific one.  *See* Pattern Crim. Jury Instr. 6th Cir. 2.05 (2017 ed.) (willfully) ("The Committee instead recommends that the district court define the precise mental state required for the particular offense charged as part of the court's instructions defining the elements of the offense.").

*United States*, 325 U.S. 91, 105 (1945).  The inclusion of a synonym for willfulness in a jury instruction is not likely to produce a grave miscarriage of justice.

Defendant also objects to the portion of Instruction 15 that provided, "the defendant acted willfully if he seized Deric Baize . . . recklessly disregarding *the possibility* that the seizure was constitutionally unreasonable."  Defendant argues that this instruction permitted the jury to convict if there was only a "*possibility*" that Baize's rights were violated.  This argument, however, ignores the fact that, pursuant to a separate instruction, the jury had to specifically find that Baize's rights were actually violated, which they did.  (PageID # 286.)

### D.  Redaction of Order Dismissing Charges against Baize

The state-law charges defendant brought against Baize were dismissed after the state prosecutor and Baize's defense counsel agreed to a dismissal order, which provided, "[Baize] stipulates that there was probable cause with respect to the charges herein."  (PageID # 250.)  It is undisputed that Baize was not party to the creation of the order, did not know about the stipulation, and learned of the dismissal of the case against him over a month after it occurred.  (PageID # 1181.)  Baize's signature is not on the order.  (PageID # 250.)  *See also* Def. Resp. to Gov't Mot. in Limine at 1-2 (PageID # 254-55) ("[B]oth the defense attorney and the prosecutor signed the order, . . . signifying their agreement with the contents of the order . . . .  [T]he parties *with legal training* . . . agreed that probable cause *did* exist." (first emphasis added)).

At trial, the government introduced a copy of the dismissal order to prove an element of malicious prosecution.  Defendant objected, however, because the government proposed redacting Baize's purported stipulation from the order.  (PageID # 90, 254, 792-93.)  The government asserted that the stipulation in the order would mislead the jury as to a core element of its case, and that a limiting instruction would be ineffective.  (PageID # 1170.)  Defendant

asserted, on the other hand, that a redacted dismissal order would suggest prosecutors' belief that probable cause to arrest Baize was lacking.  (PageID # 1172-73.)  The district court sided with the government, and defendant now challenges the district court's ruling.

A district court's evidentiary decisions are reviewed for abuse of discretion.  *United States v. Marrero*, 651 F.3d 453, 471 (6th Cir. 2011) (citing *United States v. Wagner*, 382 F.3d 598, 616 (6th Cir. 2004)).  "That is, we will overturn a ruling on the admissibility of evidence only if the district court 'committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors, . . . improperly applied the law, or used an erroneous legal standard.'"  *Id.* (quoting *United States v. Haywood*, 280 F.3d 715, 720 (6th Cir. 2002)) (brackets omitted).  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Defendant does not allege that the district court misapplied the law or used an erroneous legal standard, so we may only overturn the district court's decision if it committed a clear error of judgment in the conclusion it reached.  Additionally, defendant concedes that the jury was not bound by the stipulation and needed to make an independent finding whether probable cause existed.  (Def. Br. at 33.)

The district court was entitled to conclude that the probative value of the probable-cause stipulation was substantially outweighed by its prejudicial effect.  The mere fact of dismissal (as the redacted order reflects) does not communicate that the officer lacked probable cause to arrest.  Rather, dismissal is a function of prosecutorial discretion and could have resulted from any number of things, such as the prosecutor's opinion about the ultimate burden of proof.  *See also*

Def. Br. at 33 ("[T]he complete order more accurately reflects both the prosecutor's and defense counsel's belief that the case could not be proved beyond a reasonable doubt even though probable cause existed for arrest."); Trial Tr. at 11:1-7 ("There may have been a concern that, hey, we might not be able to prove this beyond a reasonable doubt, but that's not the probable cause standard.") (PageID # 1173). This stands in contrast to an unequivocal statement, in a court document, in which it appeared (inaccurately) that Baize himself stipulated that defendant had probable cause to arrest him. The district court also gave careful consideration to the potential consequences of leaving the probable-cause stipulation unredacted, such as a need to bring in the attorneys in Baize's prosecution to testify whether the dismissal was ministerial, which could further confuse the jury. (PageID # 1183-84.) Finally, the district court recognized the lack of evidence that Baize agreed to any such stipulation. (PageID # 1174-75.) We cannot say that the district judge committed a clear error of judgment.

Separately, defendant argues that the "rule of completeness" required admitting the unredacted dismissal order. (Def. Br. at 32-33.) Under that rule, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. The rule of completeness, however, "allows a party to *correct* a misleading impression." *United States v. Adams*, 722 F.3d 788, 826 (6th Cir. 2013) (emphasis added) (quoting *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009)). The purpose of the rule would not be accomplished if one allegedly misleading impression was substituted for another, more misleading one. Furthermore, Rule 106 permits inclusion of other parts of the writing if, "in fairness," they ought to be considered. The district court's decision to redact the stipulation pursuant to Rule 403 amounts to a conclusion that "fairness" would not be

served by admitting evidence it considered unduly prejudicial.  *See Merrick v. Mercantile-Safe Deposit & Tr. Co.*, 855 F.2d 1095, 1104 n.10 (4th Cir. 1988) ("[T]he 'fairness' standard prescribed by Rule 106 strongly suggests the appropriateness of the type of inquiry more specifically required by Rule 403.").

Defendant also claims that a limiting instruction would have eliminated the prejudice that justified redacting the stipulation.  (Def. Br. at 34.)  Given that "[w]e grant the district court 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative value of the evidence," we disagree.  *United States v. Poulsen*, 655 F.3d 492, 509 (6th Cir. 2011) (quoting *United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989)).  A limiting instruction "is not . . . a sure-fire panacea" for prejudice.  *Haywood*, 280 F.3d at 724. Furthermore, the district court considered defendant's request for a limiting instruction and posed it to the government, and the government set forth unrebutted reasons why that would be ineffective.  (PageID # 1177-78.)  *Accord* Fed. R. Evid. 403 advisory committee's note ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction."). Relatedly, the district court repeatedly suggested the parties come to an agreement about "some sort of stipulation to be read to the jury about the dismissal of the case against [Baize]" that would obviate the need to enter the dismissal order, but defendant did not pursue this option. (PageID # 1175-76, 1184.)  *Accord id.* ("The availability of other means of proof may also be an appropriate factor" in a district court's Rule 403 ruling.).

### E.  Cross Examination & Defendant's Fifth Amendment Right

Again, we review evidentiary rulings for an abuse of discretion, reversing "only if the district court committed a clear error of judgment in the conclusion it reached upon a weighing

*United States v. Matthew B. Corder*                                    19

of the relevant factors, . . . improperly applied the law, or used an erroneous legal standard."

*Marrero*, 651 F.3d at 471 (brackets omitted).  This standard applies to constitutional challenges

to evidentiary rulings.  *See United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (citing

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997)).  "Additionally, 'reversal is appropriate only

if the abuse of discretion was not harmless error,' that is, only if the erroneous evidentiary ruling

affected the outcome of the trial."  *Marrero*, 651 F.3d at 471 (quoting *United States v. Vasilakos*,

508 F.3d 401, 406 (6th Cir. 2007)) (brackets omitted).

   Federal Rule of Evidence 608(b)(1) provides:

> (b) Specific Instances of Conduct. Except for a criminal conviction
> under Rule 609, extrinsic evidence is not admissible to prove
> specific instances of a witness's conduct in order to attack or
> support the witness's character for truthfulness.  But the court may,
> on cross-examination, allow them to be inquired into if they are
> probative of the character for truthfulness or untruthfulness of:
> (1) the witness. . . .  By testifying on another matter, a witness does
> not waive any privilege against self-incrimination for testimony
> that relates only to the witness's character for truthfulness.

*See also* Fed. R. Evid. 608(b) advisory committee's note (2) (observing that "the possibilities of

abuse are substantial"; "the overriding protection of Rule 403" applies as a safeguard; and "the

instances inquired into [must] be probative of truthfulness or its opposite and not remote in

time").

   The internal affairs division of defendant's police department investigated the propriety

of defendant's arrest of Baize.  (PageID # 423.)  In 1991 and 1998, too, defendant was the

subject of internal affairs investigations, and in the course of those investigations, he lied to the

investigators.  (Def. Br. at 34-35; Def. Reply at 15.)

   Defendant argues that permitting cross-examination concerning his lies to internal affairs

investigators in 1991 and 1998 violated both his Fifth Amendment right against self-

incrimination and Federal Rule of Evidence 608(b).   (Def. Br. at 34.)   Over defendant's

objection, however, the district court permitted the government to elicit defendant's testimony

admitting these lies.  The district court based its ruling on *Brown v. United States*, 356 U.S. 148

(1958), concluding that defendant's testimony about his own truthfulness had opened the door to

such cross-examination.   (PageID # 418-19.)   In *Brown*, the Supreme Court established the

general rule that a "voluntary witness," i.e., one who is not compelled to testify, such as

defendant, "could not take the stand to testify in [his] own behalf and also claim the right to be

free from cross-examination on matters raised by [his] own testimony on direct examination."

*Id.* at 156.   "[T]he breadth of his waiver is determined by the scope of relevant cross-

examination."  *Id.* at 154-55.

As proof that defendant "directly" vouched for his own credibility, the government offers

the following testimony from defendant's direct examination:

> Q.   Okay. Well, the allegation is that you lied or misled to the
>      detriment of Mr. Baize here.   Did you lie on that
>      complaint?
>
> A.   No, sir.  What I wrote down was exactly what I observed.
>
> Q.   Okay.  Now, what about the — what about the attempting
>      to elude? We've seen the statute.  What you wrote about
>      that is that to evade — after stating the obscenity again, to
>      evade ran inside the trailer.
>
> A.   Correct.
>
> Q.   Is there anything false about that?
>
> A.   Well, no.  I mean, that's exactly what he did.  In order to
>      avoid me, when I gave him the instruction to stop, that's
>      exactly what he did.  He turned and ran into the trailer to
>      avoid.

Gov't Resp. at 43 (citing Trial Tr. vol. II at 169:10-22 (PageID # 841)).

On the record before us, as well as the authority offered by defendant, we conclude that the district court did not abuse its discretion in ruling that defendant waived his Fifth Amendment right as to his prior statements to police investigators.  Defendant's belief in the veracity of his charges against Baize was a chief issue in the case against him, and he voluntarily took the stand to vouch for that belief.  Evidence of defendant's willingness to lie to other police departments to protect himself from allegations of misconduct is relevant to, and probative of, whether he would lie to the Bullitt County Sheriff's Office for the same general purpose.  The evidence is not, as defendant argues, "unrelated to [his] direct testimony and the matter being tried."  (Def. Br. at 37.)

Defendant claims that his prior statements to investigators were too remote in time.  In support, he cites only *Johnson v. Elk Lake School District*, 283 F.3d 138, 145 n.2 (3d Cir. 2002).  In *Johnson*, the plaintiff accused her high school guidance counselor of violating 42 U.S.C. § 1983 and state tort law by sexually harassing and abusing her.  During cross-examination, plaintiff's counsel sought to question the defendant about having lied about making the dean's list in college on the resume he submitted when he applied for the guidance counselor job.  The district court sustained the defendant's objection, stating that the inquiry was too "out in left field" to have any "immediate bearing on the case."  *Id.*

The Third Circuit affirmed, applying the abuse-of-discretion standard.  It noted that the remoteness of the lie, which occurred "more than nine years before the trial . . . substantially diminished its probative value."  *Id.*  The Third Circuit approved the district court's additional rationale, acknowledging that the evidence was only "arguably probative" of the defendant's truthfulness with respect to defending the sexual-harassment charge; the defendant's lie,

"although duplicitous and wrong, was not so indicative of moral turpitude as to be particularly probative of his character for untruthfulness." *Id.*

       *Johnson* is distinguishable.  There, the Third Circuit reviewed the district court's decision to *sustain* the defendant's objection, whereas we are reviewing the district court's decision to *overrule* a similar objection.  *Compare Johnson*, 283 F.3d at 145 n.2 (affirming decision to prohibit inquiry into nine-year-old evidence of dishonest conduct), *with Deary v. City of Gloucester*, 9 F.3d 191, 196 (1st Cir. 1993) (affirming decision to permit inquiry into ten-year-old evidence of dishonest conduct); *see also Deary*, 9 F.3d at 196 ("[C]lose proximity in time is not required under Fed. R. Evid. 608(b).").  Importantly, the evidence in *Johnson* was "out in left field" vis-à-vis the crime charged; the evidence here, on the other hand, is very similar to conduct bearing on a core element of Count 2 that defendant addressed during his voluntary testimony.  Although temporal remoteness reduces the probative value of the evidence, it does not eliminate it, and that probative value is bolstered by the similarities the older evidence has with the instant crime.

       Independent of his Fifth Amendment and Rule 608(b) claims, defendant alleges that he was prejudiced by the prosecutor's method of eliciting the testimony about the prior investigations.  On cross-examination, defendant stated that he could not remember the number of prior lies he told, agreeing that "[i]t was a couple of times" in response to the government's suggestion that he had lied "multiple times."  (PageID # 423-424.)  On re-direct, defendant said he lied exactly twice.  (PageID # 883.)  In its closing argument, however, the government stated in part that defendant "couldn't even remember how many times he lied to investigators." (PageID # 1018-19.)

Because defendant testified that he did, in fact, remember how many times he lied, the government's closing argument was inaccurate.  But this impropriety was harmless, because the jury heard the defendant on both re-direct and re-cross clarify that he only lied twice.

### F.  Sentence Enhancement for Physically Restraining Victim

"The district court's sentencing determinations are reviewed for reasonableness, using a deferential abuse-of-discretion standard."  *United States v. Gray*, 692 F.3d 514, 521 (6th Cir. 2012) (citing *United States v. Martinez*, 588 F.3d 301, 324 (6th Cir. 2009)).  "Procedural reasonableness requires ensuring that 'the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . .'" *Id.* (quoting *Martinez*, 588 F.3d at 324).  "When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact *de novo*."  *United States v. Tolbert*, 668 F.3d 798, 800 (6th Cir. 2012) (quoting *United States v. May*, 568 F.3d 597, 604 (6th Cir. 2009)).  "The district court's interpretation of the Sentencing Guidelines is reviewed *de novo*."  *Id.* (citing *United States v. Anglin*, 601 F.3d 523, 526 (6th Cir. 2010)).

Over defense counsel's objection, the district court applied a two-level enhancement to defendant's Guidelines range under USSG § 3A1.3.  That enhancement applies "[i]f a victim was physically restrained in the course of the offense . . . ."  USSG § 3A1.3 (2016).  "Section 3A1.3 does not apply . . . when physical restraint is already an element of the offense — that is, when it would double-count the physical restraint."  *United States v. McCoy*, 480 F. App'x 366, 372 (6th Cir. 2012) (citing USSG § 3A1.3 cmt. n.2).  "[I]mpermissible 'double counting' occurs when precisely the same aspect of a defendant's conduct factors into his sentence in two separate ways."  *United States v. Farrow*, 198 F.3d 179, 193 (6th Cir. 1999) (citing *United States v.*

Case No. 16-6592                                                                    24
*United States v. Matthew B. Corder*

*Perkins*, 89 F.3d 303, 310 (6th Cir. 1996)).  In other words, double counting occurs "[i]f a single aspect of the defendant's conduct both determines his offense level and triggers an enhancement . . . ."  *Id.*

Defendant maintains that the enhancement was inapplicable because physical restraint was an element of the offense.  (Def. Br. at 49.)  He concedes that we have affirmed application of the enhancement to a defendant convicted under 18 U.S.C. § 242, *see Gray*, 692 F.3d at 521-22, but he argues that the element of physical restraint was "injected" into the instant case when the jury had to find that he violated Baize's right to be free from unreasonable seizures in order to convict.

The district court did not misapply the Guidelines.  Section 2H1.1(a)(3)(A) sets a base offense level of 10 "if the offense involved the use or threat of force against a person," which occurred here when defendant arrested Baize.  The district court indicated that it was applying the § 3A1.3 enhancement due to that arrest *and* the fact that defendant, through his police report, caused Baize to be incarcerated for two weeks.  (PageID # 1394.)  Because the base offense level and the enhancement each were adequately supported by separate instances of defendant's conduct, no double counting occurred.

**AFFIRMED**.